LEWIS
v.
BRACKEN-
RIDGE.

## LEWIS v. BRACKENRIDGE.

The constitutional provision, that "no law impairing the validity of contracts shall ever be made," extends to all rights accruing under all contracts, whether written or parol, whether express or implied, whether arising from the stipulation of the parties, or accruing by the operation of law.

This constitutional provision must be considered as rendering void any statute which is retrospective, and which destroys a vested right of action arising *ex contractu.* But the legislative power of limiting the time, and regulating the manner, in which rights shall be legally demanded, does not interfere with the rights themselves, nor in any manner affect the above construction of the constitution.

Independently of the constitution, it is a general rule, subject however to exceptions, that statutes shall have a prospective operation only; and it is a well-settled principle of the common law, that a statute cannot have a retrospective operation so as to divest a vested right of action.

The undertaking of special bail is, that the principal shall satisfy the judgment of the Court, or render his body in execution; or that they will do it for him. If the ca. sa. be returned non est, the bail are liable to a suit; but, if the principal live, they have eight days in term to surrender him after the writ against them is returned, if it be in debt: when that period expires, the liability of the bail becomes absolute.

When the bail are absolutely fixed, and have no further time, the right of the judgment creditor to his debt from the bail is a vested right, arising *ex contractu;* of which right no subsequent legislative act can deprive him.

The statute of 1821, authorizing a surrender of the principal in discharge of the bail at any time before judgment against them, can have no retrospective operation; but must be construed to apply to cases, arising subsequently to the statute.

ERROR to the *Franklin* Circuit Court.

HOLMAN, J.—*Lewis* commenced an action of debt against *Brackenridge,* on his recognizance, as special bail for *Oliver.* The capias was returned executed, on the 1st day of the *March* term, 1820. After various continuances were had, and several issues made up, the defendant, on the 9th day of the *March* term, 1822, moved to dismiss the suit at his costs, on the ground that *Oliver,* the principal, had surrendered himself into custody, in discharge of his bail, before judgment was rendered against the bail: which surrender, agreeably to a bill of exceptions, was made during that term. The Court sustained the motion and dismissed the suit.

This suit was dismissed by virtue of an act of assembly, approved *December* 26th, 1821, which provides, that, in all cases

in favour of special bail, if the principal is surrendered before judgment against the bail, the suit shall be dismissed at the costs of the bail.

The principal question, arising out of those proceedings, is, Is this case embraced by this act of assembly? The suit was commenced in *February*, 1820, and the act passed in *December*, 1821; and will this act operate to destroy the claim which the plaintiff had been pursuing, by a legal course, for nearly two years? This question is of very high importance; and in order to give it an answer we will divide it, and inquire, first, whether an act of assembly should be so construed as to destroy a vested right of action; and, secondly, whether the plaintiff, at the time this act was passed, was in possession of such a vested right.

In prosecuting the first inquiry, we find that the 18th section of the 1st article of the constitution provides, that "no law impairing the validity of contracts shall ever be made." From which we learn, that all contracts, that is, all obligations created by them, and all rights arising under them, are to be held sacred, and forever to continue unaffected by legislative interference. The law, under which the contract was executed, is to be and remain the only rule by which the contract shall be construed. The *obligations shall* not be increased, nor the rights diminished, by any act of future legislation. Thus far the case appears clear. But what rights are thus secured from legislative interposition by this guarantee of the validity of contracts? There can be no question but this guarantee extends to all rights, arising under all contracts, whether written or parol, whether express or implied, whether arising from the stipulation of the parties, or accruing by operation of law. There can be no question but it extends to all rights which are said to arise *ex contractu*, as contradistinguished from those arising *ex delicto*. Without inquiring whether it will admit of a further extension, we would take this view of the constitution, as a rule to guide us in the construction of any act of assembly which should seem to contravene this constitutional provision. And this rule would prohibit the passage of an act, which would destroy any vested right of action that had arisen under any pre-existing contract; or if an act were passed in such general terms as should apparently embrace any such vested right of action, it would give it such a limited construction as to allow it a prospective and not a retro-

spective operation, so as to embrace future rights of action on-
ly; leaving all vested rights of action to the undisturbed con-
trol of the pre-existing laws.    The power which legislative bo-
dies have assumed, of limiting the time, and regulating the man-
ner, in which rights shall be legally demanded, does not interfere
with the rights themselves, nor in any manner affect this rule of
construction.

But, independently of this clause in the constitution, it is a ge-
neral rule, that statutes should be so construed as to have a pro-
spective operation only.    There are many exceptions to this ge-
neral rule, which it is at present unnecessary to enumerate, in-
asmuch as the question is not how far an act of assembly may be
retrospective, but whether it should be construed to have such
a retrospect as to destroy a vested right of action.    That it
should not be so construed as to operate retrospectively in de-
stroying such a vested right, is a principle clearly maintained
by writers of the highest authority, and conclusively settled in
a variety of decided cases.    See 6 Bac. 370.—1 Bl. Comm.
46.—Hale, 346.—*Wilkinson* v. *Meyer*, 2 Ld. Raym. 1352.—*Cal-
der* v. *Bull*, 3 Dall. 386.—*Ogden* v. *Blackledge*, 2 Cranch, 272.
Besides which, we shall notice three cases which rest solely on
this principle, and establish it in unequivocal terms.    The first
is the case of *Gilmore* v. *The Executor of Shooter*, which seems
to be a leading case.    It is reported in 2 Mod. 310, 2 Lev. 227,
1 Ven. 330, 2 Show. 16, Jones, 108; and is referred to as un-
questionable, both in *England* and the *United States*.    See 6 Bac.
370.—4 Burr. 2460.—7 Johns. R. 477.    After the passage of
the statute of 29th Car. 2, declaring that after the 24th of *June*,
1677, no action should be brought to charge any person on any
promise made in consideration of marriage, unless the same
were in writing—and after the 24th of *June*, 1677—this action
was brought by *Gilmore*, on a verbal promise, in consideration
of a marriage made before the statute.    It was then held by
the Court, that, although the expressions of the statute were
positive that no such action should be brought, the statute
should not have a retrospect to take away an action to which
the plaintiff was before entitled.    The next *is the case of Couch*,
*qui tam*, v. *Jeffries*, 4 Burr. 2460.    After a verdict in an action
for the penalty for not paying the stamp duties on an indenture
of apprenticeship, a statute was made discharging from the pe-
nalties, provided said duties were paid before a particular day;

Nov. Term,
1822.

Lewis
v.
Bracken-
ridge.

agreeably to which provision the duties in this case had been paid; yet the Court gave judgment for the plaintiff, holding that he had a vested right to the penalty before the making of the statute, which right was not taken away by the general words of the statute. The third case we shall thus notice, is that of *Dash* v. *Van Kleeck*, 7 Johns. R. 477. An act of assembly authorized the sheriff to take bail of execution debtors for their keeping within the gaol liberties. On this act the Court decided, in the case of *Tillman* v. *Lansing*, 4 Johns. R. 45, that when such bail was given, and the debtor departed from the liberties, an action lay against the sheriff for an escape; and that he could not defend himself as at common law, by showing that the debtor had returned to the liberties, and was again in custody before the commencement of the action. After this decision, and after this action was brought against the sheriff for an escape, in a case where the debtor had returned to the liberties, and had been a long time in custody before the action was commenced, the legislature passed another act, declaring that the above-mentioned act "should not be so construed as to prevent any sheriff, in cases of escapes, from availing himself, as at common law, of any defence arising from a return of the prisoner into custody before the action was commenced for the escape." And the question was, whether this last act embraced that case so as to destroy the plaintiff's right of action. There was no doubt but the legislature apparently intended to embrace that and all similar cases; which occasioned a division of the Court—*Spencer* and *Yates* Js. holding that the case was within the act; but *Kent* C. J. and *Thompson* and *Van Ness* Js. decided that the plaintiff's right of action was vested, and was not embraced by the act, and gave judgment for him accordingly. This case was examined at great length, the judges giving their opinions *seriatim*. The whole doctrine on the subject is set forth so fully, so clearly, and so conclusively, in the learned opinions of C. J. *Kent* and others, as not only to satisfy our minds of the correctness of this principle, but also to leave no room for argument on the subject. We feel therefore warranted in deciding, that an act of assembly should never be so construed as to divest a right of action, that had accrued and was in a legal course of investigation prior to its enactment; and, more particularly, when that right had arisen under a pre-existing contract.

It now remains for us to examine into the right of *Lewis* against *Brackenridge*, and to determine whether, at the time of the passage of this act of our legislature, he had such a vested right of action as could not be affected by the act. The undertaking of the bail is, that the principal shall satisfy the judgment of the Court, or render his body in execution, or that he will do it for him. When the principal fails to satisfy the judgment, and his body cannot be had in execution by the regular process of law, the bail becomes bound; and, agreeably to a strict construction of his undertaking, is, from the return of such ineffectual process against the principal, absolutely liable for the amount of the judgment. But inasmuch as his liability arises from the default of another, he has always been highly favoured in law, and looked upon by the Courts of justice with an indulgent eye: so that if the principal is living, a further day is given the bail in which to make the surrender. When the proceeding against him is by action of debt on his recognizance, if the principal be surrendered within eight days in term after the return of the capias, he will be discharged; after which time he is said to be fixed, and no further indulgence is given. But this indulgence is neither uncertain nor fluctuating. It was settled at an early stage of the *English* jurisprudence, and does not depend on the favour of the Court. The rights of a plaintiff against the bail are as well settled, and as clearly defined, as the rights in any other cases of contract whatever. In this case, *Brackenridge* had eight days in term, after the return of the capias, to render the body of *Oliver* into custody; which he failed to do, and consequently became fixed, and, so far as his liability depended on a surrender of the principal, became absolutely bound to satisfy the judgment. On the return of the process against *Oliver*, *Lewis* had a right to commence his action; but his right to prosecute it to final judgment, was defeasible by the render of the principal within eight days, *sedente curia*, after the return of the capias: when those eight days were expired, his right to prosecute his action to final judgment became absolute. Agreeably to every principle of law, and the cases already cited, there seems to us no question but that the right of *Lewis* was a vested right—a right as complete and conclusive as that of the plaintiff in any of the three cases we have particularly set forth. One of those cases was on a *verbal* promise in consideration of marriage, but suit was not commenced until after the

OF THE STATE OF INDIANA.

225

Nov. Term,
1822.

LEWIS
v.
BRACKEN-
RIDGE.

making of the prohibitory statute. Another was for a penalty, to which the plaintiff had no claim until his action was commenced. The third was one of those seemingly hard cases, where an innocent person was to be made liable for the default of another, when the default had not in fact rendered the plaintiff in a worse situation than he was in before, the debtor having returned to the bounds before the commencement of the suit. So that on the authority of these cases, as well as on general principles, we are authorized in determining, that at the time of the passage of this act, the plaintiff had a vested right of action, which could not be divested by the act; and also that his right arose under an express contract, and was guarantied to him by the most rigid construction of the 18th section of the 1st article of the constitution.

It is never to be presumed that a legislative body would transcend its powers, or act contrary to the rules of universal justice. It is equally beyond the rules of a fair presumption, to suppose it would interfere with private rights, so as to do a manifest injury to one individual for the benefit of another. We have therefore just ground to presume, that the legislature, in the passage of this act, did not intend to destroy any right that had arisen under pre-existing laws. They were aware of the provisions of the constitution. They no doubt understood the general rule, that acts of assembly are to operate prospectively (1). We may therefore suppose, that although they have used general expressions, seemingly embracing all present, as well as future cases, without any saving of vested rights, yet it was with the intention of regulating future cases, and the rights arising under them only; deeming the present cases, and the rights already vested, as sufficiently protected either by the constitution, or the well-known rules of construing statutes. This case remains in the same situation in which it would have stood if this act had never been passed; and should have regularly progressed in the Circuit Court, without any reference to the act.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

*Caswell*, for the plaintiff.

*Test*, for the defendant.

(1) The very essence of a new law is a rule for *future* cases. *Nova constitutio futuris formam imponere debet, et non præteritis:* Bract. lib. 4, fol. 228. An *ex post facto* law, in the strict technical sense of the term, is usually understood to ap-

ply to criminal cases, and this is its meaning when used in the constitution of the *United States;* yet laws impairing previously acquired *civil* rights, are e-qually within the reason of that prohibition, and equally to be condemned. Per *Kent,* C. J., in *Dash* v. *Van Kleeck,* cited in the text.

A suit was instituted in the C. Court, *U. S.,* 1st circuit, for a tract of land in *New-Hampshire.* The defendant insisted on a compensation, under a statute of the state authorizing the claim, for improvements made *before* the existence of the law. *Held,* that, so far as it *applied to past* improvements, the statute went to impair the value of the plaintiff's right in the premises, vested previously to its passage;—was repugnant to the constitution of *New-Hampshire,* which prohibits the enactment of *retrospective* laws, both in civil and criminal cases;—and was therefore void as respected the case before the Court. *Society,* &c. v. *Wheeler,* 2 Gall. 105.