## CURTISS V. AYRAULT.

*Water-course — diversion of water from artificial — Evidence — when map admissible.*

Where the owner of lands constructed a ditch through which he caused to run the waters of a creek, and subsequently subdivided the lands and conveyed the parcels to different grantees, *held*, that the grantees acquired the right to have the ditch kept open and the waters of the creek to continue to flow therein; but where, from obstructions in the ditch, resulting from the neglect of those interested to do so to keep it open, the waters of the creek had ceased to flow therein, and had been caused to overflow the land of one of the grantees, the construction of a ditch to take such overflowing waters away so that they did not run through the original ditch, was not a' diversion which would render such grantee liable to an action therefor.

In an action for diverting the flow of water from a ditch through plaintiff's lands, a map of the premises in controversy, which a surveyor who made it had testified to be correct, was referred to by a number of witnesses, in giving their testimony in explanation thereof. · *Held,* that· the map was admissible, not as independent evidence, but in connection with the other evidence, to enable the jury to understand and apply it. ·

APPEAL by plaintiff from an order at the special term denying a motion for a new trial.

The. action was brought by Ephraim F. Curtiss against John Ayrault for the wrongful diversion of the water of the stream called Indian creek from plaintiff's premises. It was commenced in a justices' court and removed into this court upon a plea of title being interposed before the justice.

It was first tried at the circuit in Livingston county in January, 1868, when the plaintiff had a verdict which was set aside by the general term of the seventh district, and the cause was retried in April, 1869, when a verdict was ordered for the defendant, which was affirmed at general term and judgment ordered for the defendant, from which the plaintiff appealed to the Court of Appeals, where the judgment was reversed and a new trial ordered. The case on that appeal is reported in 47 N. Y. 73, where a very full statement of facts is given. The cause was again tried in May, 1873, and a verdict rendered for the defendant, from which this appeal is taken.

Previous to 1849 one Newbold owned certain lands in Caledonia,

in said county, upon which was a marsh, into which Indian creek flowed. To relieve the marsh from water he dug a ditch, called the "Curtiss" ditch, through which water ran from the marsh easterly to a cove, and also a ditch called the "canal" ditch, running northerly into a sluice. In 1849 Newbold divided these lands into five lots, and conveyed the same to different owners. Through several mesne conveyances plaintiff acquired title to the most easterly lot, within which was a part of the cove where the waters from the "Curtiss" ditch ran, and defendant, through mesne conveyances, acquired title to the most westerly lot, which embraced the marsh land and the "canal" ditch. Subsequent to 1849 both ditches became obstructed, and the westerly lot again became marshy. To remedy this the owners of the lot, previous to defendant, began to clean out and enlarge the "canal" ditch. This work was continued by defendant, who deepened such ditch until the entire waters from the marsh flowed through it and ceased to flow through the "Curtiss" ditch. This constituted the diversion for which this action was brought. Other facts appear in the opinion.

*A. J. Abbott* and *S. Hubbard,* for appellant.

*George F. Danforth,* for respondent.

E. DARWIN SMITH, J. The chief point presented on the argument, and in the points of the plaintiff's counsel, is founded upon the exception to the refusal of the circuit judge to direct a verdict for the plaintiff at the close of the evidence as requested.

The grounds stated by the counsel and upon which the request is based are, in substance, clearly correct, but they do not cover the whole case. In the charge of the judge to the jury such views of the plaintiff's rights are substantially assumed or held; and the charge in this particular is in substantial conformity with the decision of the Court of Appeals on this branch of the case. The learned judge charged in effect, that the ditch called the cove ditch having been constructed by Newbold, the original owner of the whole tract crossed by said ditch, and the same being in existence, and the water of Indian creek flowing therein in 1849, when he subdivided said tract into four parcels, and sold the several parcels thereof to different persons, the original purchasers from him acquired the right to have said ditch kept open, and the waters then

flowing therein to continue to flow in it as it then flowed at that time in its accustomed channel, and that the grantees of such original purchasers took said land with all the rights of their respective grantors.

He then submitted to the jury the question of fact whether the defendant had diverted the water from such ditch and advised them that so long as the water flowed there in sufficient quantity for any practical purpose, the defendant had no right to do any thing which prevented that flow. Did the defendant divert the water? That was the question put to the jury. It was undeniably true, and, in fact, admitted, that the defendant constructed a ditch on his own land which drained said land and took the waters of Indian creek off of the same in another direction, being the same waters which formerly ran in said cove ditch, and which it was originally constructed to carry off to said cove on the plaintiff's land. But it was contended at the circuit by the defendant, as the judge states the defense on this point, that the flow of the water through this cove ditch had become obstructed, so that the waters of Indian creek had ceased to flow where they were intended to flow, and had spread over the defendant's lands, and had reduced such lands to practical sterility by covering them with a marsh. It was in this view of the facts, if so found by them, that the jury were allowed to find that there had been no unlawful diversion of the waters of said creek from the said cove ditch by the construction of the ditch so made by the defendant, and it was doubtless upon this ground that the verdict of the jury for the defendant was based.

The action was for the diversion of the water which should have flowed in said cove ditch by the wrongful acts of the defendant. If he had done nothing more than construct a ditch to relieve his own land from the water accumulating thereon, and which was left there to remain to the injury of said land, in consequence of the neglect of the plaintiff and others interested in the flow of such water in said cove ditch, to keep the same in proper repair, he could not properly be held to have wrongfully diverted the water from said ditch.

This is in substance what the judge held at the circuit, and the verdict of the jury was necessarily in affirmance of such view of the facts upon the evidence.

The request of the plaintiff's counsel, that the court direct a verdict for plaintiff, virtually overlooked or ignored entirely the

issue arising upon the defense as thus stated and held by the circuit judge and subsequently sustained by the jury.

Upon this branch of the case upon the great mass of testimony taken in the case, and more or less material and conflicting upon the issue really in dispute, I do not think that it was the duty of the judge to take the case from the jury, and think the plaintiff's exception to his refusal to direct a verdict in his favor not well taken.

In respect to the various other exceptions to the charge, and to the refusal of the judge to charge as requested, and to the omission or exclusion of testimony, they are either not well taken or so inconsequential that the verdict of the jury might, I think, have been sustained, and this protracted litigation ended, except for one single error which precludes us from affirming the order of the special term.

The plaintiff introduced a witness by the name of Joseph W. Holmes who testified that he was a practical surveyor and engineer, and had recently made a map of the lands mentioned in the proceedings on the trial, and their surroundings, and of the ditches thereon, and took levels of the ditches, and produced such a map, and testified that it was a correct map of the lands referred to, and the ditches and water-courses and surroundings, and that such map showed the general features of the said land, and the ditches, and the streams, etc.

This witness gave considerable testimony upon the merits referring to such map, and explanatory thereof, and of the situation and relative condition of the several parcels of land marked thereon, and of the several ditches upon the defendant's lands, and respecting the questions and matters in controversy in the action relating to such lands and ditches and localities, and quite a number of other witnesses gave like testimony in chief, referring to said map to illustrate their testimony and corroborative of its correctness as a correct representation of the condition of the localities and other matters delineated thereon, after which the plaintiff's counsel offered it in evidence, and the same was objected to by the defendant's counsel as immaterial, and the objection was sustained and the plaintiff duly excepted.

I do not see how this ruling can be sustained. A large portion of the testimony received in the cause referred more or less to this map, and to data, and marks, and figures of measurements appear-

ing on its face, all of which testimony is in a large degree unintelligible without the map.

It would be indispensable, I should think, that the map be before the jury, and that the counsel be at liberty to use it and refer to it in argument, and apply and explain the testimony of witnesses by it. Maps and plats are admissible when referred to in deeds as original evidence. *Morris* v. *Harmer*, 7 Peters, 554; *Ryan* v. *Dox*, 25 Barb. 446. And they are also admissible to exhibit the present visible condition of the premises in controversy, and to explain, illustrate and apply testimony. *Johnston* v. *Jones*, 1 Black. (U. S.) 216. In actions of ejectment, and other actions relating to real estate, and in many other cases maps are made for use at the trial, and are constantly used at the circuit, and in most cases are quite useful if not actually indispensable to enable courts and juries to comprehend readily the question in dispute.

In such cases when proved to be correct by the surveyor or engineer by whom they are made, they are received in evidence in connection with the testimony of witnesses substantially as part of their testimony, and are clearly admissible as explanatory of such testimony. They are received for the consideration of the jury so far as they are shown to be correct in connection with other evidence, and to enable them to understand and apply such evidence, and not as independent evidence.

Such, in substance, was the ruling of the judge at the circuit, who tried the case of *Johnston* v. *Jones, supra*, in reference to a large number of maps received in evidence and used on the trial of that cause, all made by living witnesses and verified by them at the trial as was done by Holmes at the trial in this action.

The ruling was approved by the Supreme Court of the United States in banc, the said maps all being embraced in the case, and used in the argument. *Johnston* v. *Jones*, 1 Black. 222; S. C., 18 How. 150.

The exclusion of this map after so much testimony had been taken in the cause, upon the merits referring to it, and which could not be understood without it, we think was clear error, making it our duty to grant a new trial.

The order of the special term should, therefore, be reversed and a new trial granted, with costs to abide the event.

*New trial granted.*