## WEBBER *v.* EMMERSON.

1. A general exception to the charge to the jury without either specifying the objectionable propositions, or excepting to each and every of the instructions, is not available, if any single proposition embraced in the charge is sound.

2. A bill of exceptions must be most strongly construed against the party excepting; this court can make no intendment in his favor. An objection should precede an exception, and where in any view the evidence offered is clearly incompetent, a general objection will be sufficient, but where evidence is objected to and is susceptible of being made admissible by the introduction of further testimony, the specific grounds of objection must be stated.

3. So also a motion to strike out certain evidence, which covers nearly all the material evidence of the opposite side, is too broad. The motion should specifically designate the objectionable evidence.

4. Where a mortgagee of chattels, in the absence of an agreement in the mortgage, purchases the property at a mortgage sale and appropriates it to his own use, he becomes liable for the actual value thereof at the time of the sale, without reference to the amount bid.

5. The declaration of a third party, stranger to a suit, and made in his own favor, concerning his connection with the defendant in a material matter in dispute in the action, cannot be admitted for any purpose, there being no privity between such third party, and the plaintiff not being present at the time the declaration was made.

*Error to Probate Court of Arapahoe County.*

ON the 3d day of June, 1873, Emmerson, the defendant in error, made his promissory note to Webber, the plaintiff in error, for $1,094.87, payable July 1st, 1873, with interest at two per cent per month. To secure the payment of the note, Emmerson executed a chattel mortgage to Webber, on a lot of furniture, in a hotel being conducted by Emmerson. About the 27th of June, 1873, Emmerson went away, leaving the property in charge of one Allsberry. On the 2d day of July, 1873, Webber took possession of the goods described in the mortgage, and on the 15th of the same month sold them at public auction, and bought them in, but for what amount does not appear. In November, 1874, Webber commenced an action against Emmerson on the note in the probate court of Arapahoe county. The declaration consisted of a special count setting out the note and the common counts. The defendant pleaded the general issue, payment and a plea of set-off. In this latter plea the defendant averred the giving of the mortgage, "that by said mortgage it was provided that if the defendant should pay the note on the 1st day of July, 1873, then the mortgage to be void, otherwise to remain of force, and until default, defendant might hold possession of the furniture; but on default, or if the goods should be attached or claimed by any person or persons, or if defendant should attempt to sell or remove the goods without authority or permission of plaintiff in writing, then plaintiff might take possession of the furniture to his own use and sell the same for the

best price that could be obtained, and out of the money arising from the sale, pay the note and charges touching the same, and surplus, if any, to the defendant; that in pursuance of said mortgage, plaintiff took possession on default and proceeded to advertise the furniture as for sale, and on the 3d day of July, 1873, made a pretended sale thereof at public auction and bid it off for himself, and did then and there, under and by virtue of such pretended sale, convert all of the furniture to his own use, and did thereby then and there become liable to defendant for the full and reasonable value thereof; that said furniture was of the value of $2,500, out of which defendant is ready and willing and offers to set off and allow plaintiff the full amount of the damages in the first count of the declaration mentioned, and asks judgment for the balance," etc.

A general denial was put in by the plaintiff to the special pleas. At the trial, Emmerson testified in his own behalf to having left the property in charge of Allsberry, thinking he would return in ten or fifteen days; that he last saw the property on the 27th of June, 1873, and that it was worth not less than $2,000. Upon cross-examination, Emmerson testified as follows:

"On 27th June left property in charge of Allsberry. He took possession of premises night of 26th of June, but I left premises morning of 27th of June. Sold articles to him with certain conditions, understandings, and a certain arrangement; after this arrangement I left goods with him subject to our bargain that evening."

The re-examination was devoted to an explanation of the understanding or arrangement with Allsberry. Other evidence was also put in by the defendant for the purpose of showing that the sale to Allsberry was conditional only, and had not been carried out.

The testimony of the witness Stover, which is stated substantially in the opinion, was directed to the same end. The method adopted to exclude the defendant's evidence, as well as the character of the evidence, is discussed in the opinion.

The jury returned a verdict for the defendant in the sum of $398.77. The plaintiff put in a motion for a new trial, the motion was overruled and judgment entered on the verdict. To reverse this judgment, the plaintiff sued out this writ of error.

Mr. E. P. JACOBSON, for plaintiff in error.

Mr. JOHN W. BLACKBURN, for defendant in error.

THATCHER, C. J.   Many of the errors assigned being founded upon exceptions to the instructions of the court, and to evidence not properly taken in the court below, cannot appropriately be considered here with a view to a reversal of the judgment. But for the purpose of indicating what is the approved practice in such cases, we will briefly refer to the fatal defects in some of the exceptions upon which errors have been assigned.

An exception was taken to the instructions *en masse*, prayed by the defendant and given by the court. These instructions involve distinct legal propositions, and while in our opinion they substantially present the law of the case, we are not called upon to examine them with a view to determine. If any single proposition embraced in the charge is sound, a general exception "to said instructions," without either specifying the propositions deemed objectionable, or excepting to each and every of the instructions, is not available.   *Decker* v. *Mathews*, 12 N. Y. 320 ; *Hunt* v. *Maybee*, 7 id. 273; *Gray* v. *The People*, 22 Mich. 220 ; *Thrasher* v. *Tyack*, 15 Wis. 258 ; *Mershow* v. *National Ins. Co.*, 34 Iowa, 88 ; *Johnson* v. *Jones*, 1 Blackf. 220.

A schedule of what purported to be the property described in the chattel mortgage executed by Emmerson to Webber was received in evidence after Emmerson had testified that he had made the schedule and felt confident that it was very nearly ·correct. The exception to the admission of the schedule is noted by the following memorandum in the bill of exceptions :   "Schedule received in evidence and excep-

tion for plaintiff." It is unnecessary to say that this exception is not in due form. It is no such exception as this court can recognize. It does not appear that any objection was interposed to the receiving of the schedule. A party cannot silently consent to the admission of evidence and then take an exception. An exception duly reserved, implies that an objection has been previously made to the admission of the evidence, and that such objection had been overruled by the court. But we are not permitted to take any thing by inference. That an objection to the admission of the evidence was made at the trial must affirmatively appear. A bill of exceptions must be construed most strongly against the party excepting, and we can make no intendment in his favor. Again, the exception is general in its terms. The grounds of the objection are not specified. The attention of the court below and of the opposite party was not called to any particular objection, and, therefore, if any existed, no opportunity was given to remove it. This exception for these reasons cannot be considered. We will not pursue any further an examination of other exceptions, to which one or more of the same objections lie.

Where the evidence is clearly not competent in any view for any purpose, a general objection will be sufficient; but in all cases where the evidence is susceptible of being made admissible by the introduction of further testimony, the specific ground of objection must be stated. The true rule is laid down in *Cody* v. *Butterfield*, 1 Col. 384.

The motion to strike out certain testimony, covering as it does nearly all the material evidence in behalf of the defendant, is too broad. As when evidence is admitted without an exception properly reserved, it is esteemed to be received by consent of the party affected by it, and as much of the evidence admitted in behalf of the defendant in this case was pertinent and material, a general motion to strike out cannot be granted, nor will the court, upon such general motion, search the whole evidence, with the view to ascertain if any testimony was improperly admitted. The motion

should be specifically confined to the objectionable evidence.

The sole purpose for which evidence could be admitted of a sale of the mortgaged property by Emmerson to Allsberry, would be to show that the title to said property charged only with the lien of the mortgage, had vested by virtue of such sale to Allsberry; and that, therefore, if after such sale, Webber had converted the property to his own use without a sale under the mortgage, or had bought it under a mortgage sale, he would not be liable to Emmerson, but to Allsberry for the value of the chattels in excess of the amount due on the note at the time of such conversion, or such mortgage sale. In this view it was 'important that the character of' the transaction between Emmerson and Allsberry should clearly appear. If the sal by Emmerson to Allsberry was *bona fide* and absolute, vesting the title in Allsberry subject to the lien, Emmerson under his plea of set-off could recover no judgment, unless for costs only, against Webber. If the mortgage sale had been conducted in strict accordance with law, and the property had been purchased, not by the mortgagee, but by one competent to buy, the liability of Webber would be measured by the value of the property, as determined by the price paid by the highest bidder, for the excess of which over and above the amount due on the note he would be required to account. But when the mortgagee, unmindful of his fiduciary relation, assumes, in the absence of an agreement with the mortgagor, to purchase the mortgaged property, and to appropriate it to his own use, he violates the trust reposed in him, and becomes liable for the actual value of the property at the time of such sale, without regard to the price bid.

The law prohibits a trustee, where interest and duty so clearly conflict, from purchasing and holding for his own use and benefit property toward which he sustains a fiduciary relation. Webber's liability arises, therefore, not from the purchase made at the mortgage sale, but from

the fact that he reduced to possession, and without warrant of law converted to his own use, the mortgaged property.

It was competent to show at the trial the character of the alleged sale of the property in question by Emmerson to Allsberry, as so much of its value at the time of its conversion, as exceeded the amount of Webber's lien, could not inure to the credit of Emmerson if he had before that time parted with the title, subject alone to the lien.

For the purpose of establishing the character of the sale, the defendant introduced the witness Stover, who testified to a conversation with Allsberry on the day of the mortgage sale. To the interrogatory, "What did Allsberry say?" a general objection was made, overruled and an exception taken. Is this question admissible for any purpose? We think not.

Allsberry, the witness testifies, declares that he was under no obligations to take the property, that he had already turned it over to the plaintiff, and that he would not have any thing more to do with it. This evidence, if it was admissible, tended to show that the sale to Allsberry had never been completed, that the title had never passed, and it may have influenced the verdict of the jury.

The witness Stover was not the agent of Webber. Webber himself was not present at the conversation, nor was there any privity between Webber and Allsberry. It is true that in certain cases the admission of third persons, *strangers to the suit*, are received in evidence, *e.g.*, in actions against a sheriff for not arresting a debtor, or for allowing him to escape. Statements made by the debtor acknowledging the existence of the debt, being sufficient to charge the debtor in the original action, are evidence against the defendant. 1 Greenleaf's Ev., § 181 ; 1 Phillips' Ev. 489.

So carefully is this principle guarded and restricted that even in the case of an escaped debtor, to bind the sheriff, the debtor's acknowledgment of the debt must have been made before his escape. *Rogers* v. *Jones*, 7 B. & C. 89.

The admission of the debtor in each case cited by Greenleaf and Phillips are clearly against his own interest. But this principle cannot be invoked in aid of the declarations and admissions under consideration. The declarations of Allsberry, made after he had parted with the possession of the property, amounted to a disclaimer of any liability on his part to Emmerson, and were, therefore, declarations in his own favor. They were improperly admitted in evidence. We discover no other material error in the record that we are at liberty to consider.

As the sufficiency of the plea of set-off was not raised in the court below, and has not been questioned here, we will not pass upon it.

As the jury may have been misled by the evidence of Stover, the judgment of the probate court must be reversed, with costs, and the cause remanded to that court for further proceedings according to law.

*Reversed.*