No. 10,868.

TAYLOR *v.* THE PEOPLE.

Decided June 1, 1925. Rehearing denied June 15, 1925.

Plaintiff in error was convicted of murder of the second degree.

*Affirmed.*

1. APPEAL AND ERROR—*Sufficiency of Evidence.* Evidence in a homicide case reviewed, and the contention that the evidence is insufficient to support the verdict, held clearly without merit.

2. CRIMINAL LAW—*Evidence—Admissions.* In the trial of a homicide case, motion to strike evidence of part of a conversation between defendant and a people's witness occurring shortly after the killing as hearsay, held properly denied, the jury being entitled

to the whole conversation and to then determine whether or not any portions were admissions against interest.

3.     *Evidence—Statements of Defendant—Mental Condition.* In the trial of a homicide case, the question of whether defendant was conscious or unconscious at the time he made statements subsequent to the killing, was exclusively for the jury under proper instructions.

4.   APPEAL AND ERROR—*Rulings on Admission of Testimony.* A judgment will not be reversed for error committed in the admission of testimony when it appears that such testimony did not prejudice the party against whom it was admitted.

5.   CRIMINAL LAW—*Instructions—Manslaughter.* In a criminal trial, there being an entire absence of evidence tending to establish involuntary manslaughter, there was no error in the refusal of the court to give a requested instruction covering that subject.

6.     *Instructions—Circumstantial Evidence.* Where there is direct evidence sufficient to convict, an instruction on circumstantial evidence is unnecessary, and may be refused.

*Error to the District Court of Rio Blanco County, Hon. John T. Shumate, Judge.*

Messrs. VINCENT, VINCENT & BOWIE, Mr. JOHN R. CLARK, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. HAROLD CLARK THOMPSON, Assistant, Mr. WILLIAM L. BOATRIGHT, Atorney General, Mr. JEAN S. BREITENSTEIN, Assistant, Mr. FRANK DELANEY, for the people.

*En banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

PLAINTIFF in error, Bert L. Taylor, defendant below, and so designated here, was convicted of murder of the second degree and sentenced to a term in the penitentiary of not less than ten years nor more than eleven years. He

brings the case here for review. He was tried on an information charging him with murder in the first degree, in the killing of Hiram G. Brunts.

The theory of the defense was that the defendant Taylor did not fire the fatal shot, but that the people's witness, Ed. Boies, fired the shot that killed Brunts. It was also contended that the defendant was in such a state of drunkenness at the time of the shooting that he was incapable of forming a deliberate intent to take life.

It appears from the testimony that the homicide occurred in a cabin called Boies Winter Camp, on Yellow creek, Rio Blanco county, on February 5, 1923. Besides Taylor and Brunts, there were present in the cabin at the time of the shooting Ed Boies, Tom Buttram, Pete Mattice, witnesses for the people, and Kay Hughes, who was a witness for the defendant. By prearrangement the parties assembled at the Boies cabin as a starting point to gather and round up cattle in that vicinity. Boies and Mattice lived at this winter camp. Buttram was the first to arrive in the morning; Brunts came later in the forenoon, Taylor and Hughes arrived about noon, and the latter two were met at the door of the cabin by Boies, who asked them to unsaddle their horses and come in to dinner. Before dismounting from his horse, Taylor asked Boies to have a drink of whiskey, and at the same time withdrew from his pocket a bottle, which Boies declined by saying "No, I don't care for any." Taylor then drew a 32-caliber pistol from his pocket and said "Take a drink." Boies obeyed and drank. The evidence discloses a previous difficulty between Taylor and Boies, at Rifle, Colorado, and that ill feeling still existed between them. Taylor and Hughes had been drinking whiskey from early morning, and had consumed a large quantity of liquor before arriving at the Boies cabin. Prior to reaching the Boies cabin Taylor exhibited an inclination to be quarrelsome. The six men assembled in the cabin, which was a log building about fourteen feet square, and immediately after their entrance, sat down at a small table, situated near the side

of one of the beds, to eat their dinner. Two of them sat on the bed, two others on boxes, and the remaining two on chairs. When at the table Taylor exhibited a disposition to incite a quarrel, but all others present were civil and peaceable in language and demeanor. Taylor said "Ed, I have had some pretty hard talk about you coming up the road;" to which Boies replied "Well, Bert, I'm not afraid of you and you're not afraid of me, and in that way we will get along pretty good;" and then Taylor said "I'm mean when I'm mean," and "I can whip any man in the house." Taylor pulled an automatic pistol out of his pocket and jerked the safety off, threw it down on the table and said "There is a man in this house I am going to kill before night." At this instant Boies and Brunts arose and withdrew from the table. After leaving the table Boies said to Brunts "Get his gun." Brunts walked over to the table and said "Bert, give me that gun before it goes off and hurts somebody," and reached out as if to take it, when Taylor jumped up and, in an angry tone of voice, said "You can't take my gun away from me," at the same time pointing his pistol at Brunts and holding it within 18 inches or 2 feet from his body, backed him over in the direction of the door, and after some change in their relative positions, discharged the gun into his body, the bullet passing from the front of the body out through the back, killing him instantly. Brunts immediately fell to the floor. After the discharge of the first shot Hughes attempted to seize Taylor, in an effort to take the pistol from him, when Taylor fired again; when Boies exclaimed "That bullet went right by my head," and thereupon grabbed his automatic pistol from the bed and fired two shots at Taylor, one of which took effect and Taylor fell to the floor; following which Hughes said to Taylor "You have killed my best friend," and then kicked and spurred Taylor in the head until he became unconscious.

The testimony of the people's witnesses was to the effect that Boies did not commence shooting until after Brunts had fallen to the floor, nor until after Taylor had fired his

second shot. Such, in brief, is the evidence of the people, which is corroborated by other evidence in the case, which we deem it not necessary to detail.

The assignment of error, that the evidence is insufficient to support the verdict, is clearly without merit. There is some conflict and some inconsistencies in the testimony, but the evidence is ample to sustain the verdict of the jury; in fact, we do not see how they possibly could have arrived at any other verdict. No witness to the tragedy testified that Taylor did not fire the fatal shot, and three eye witnesses testified that Taylor did fire the shot that killed Brunts. On this state of the evidence the verdict of the jury should not be disturbed, for insufficiency of the evidence.

Error is assigned to the admission of evidence of Reagle, giving in full all that was said in a conversation between Taylor and Hughes, on the same day of, but subsequent to, the shooting. Reagle testified that when he arrived at the cabin after the occurrence of the shooting, Taylor was lying on the bed, apparently asleep or unconscious, when shortly he turned over and began to talk to Hughes about the results of the shooting. The witness testified that Taylor appeared to be rational and perfectly conscious during the time of the conversation. When told that Brunts was dead, Taylor said he was not the man he was after, that it was Boies. Later Taylor said that there was but one thing he wanted before he went to the gallows, and that was Ed Boies. A motion to strike a portion of the statement made by Reagle, as hearsay, was properly denied by the court. The jury were entitled to have the whole conversation, and then determine, from the whole of it, as to whether or not any portions of it were admissions on the part of the defendant against interest. *Loudenback v. Oklahoma,* 19 Okl. 199, 91 Pac. 1030, 14 Ann. Cas. 988.

The question as to whether Taylor was conscious or unconscious at the time of the conversation, was one exclusively for the jury, under proper instructions. *Martinez v. People,* 55 Colo. 51, 132 Pac. 64, Ann. Cas. 1914C, 559.

Overruling the defendant's objection to the following question, is the basis of another assignment of error: "Q. You knew that when you were drinking that if you went to Boies's you would start some sort of altercation with Boies, didn't you?" This question was answered in the negative. Even if it be conceded that this question was improper, it is apparent that such error could not have prejudiced the defendant. A judgment will not be reversed for error committed in the admission of testimony, when it appears that such testimony did not prejudice the party against whom it was admitted.

It is urged that there was error in the refusal of the court to give defendant's requested instruction on involuntary manslaughter. There is an absence in the record of any act of violence, or of an assault, or even the use of language provocative of ill temper, prior to the firing of the shot that killed Brunts, except only the acts and language of the defendant himself. There being an entire absence of evidence tending to establish involuntary manslaughter, there was no error in refusing to give the instruction tendered by the defendant. *Seiwald v. People,* 66 Colo. 332, 182 Pac. 20.

It is further contended that the court erred in refusing a requested instruction that advised the jury "that in this case it is not sufficient to establish the defendant's guilt that the facts and circumstances coincide with, account for, and therefore render probable the guilt of the defendant. They must exclude to a reasonable certainty every other reasonable hypothesis." We think the court very properly refused the request, for the reason that a conviction of the defendant was not sought on circumstantial evidence alone. The conviction was had upon direct evidence. Four eye witnesses testified to the occurrence that took place in their immediate presence, which resulted in the death of the deceasd. The rule is that where there is direct evidence sufficient to convict, an instruction on circumstantial evidence is not necessary, and properly may be refused. 16 C. J. 1008; *People v. Dougherty,* 266 Ill.

420, 436, 107 N. E. 695; *State v. Link,* 87 Kan. 738, 125 Pac. 70; *People v. Steinkraus,* 244 Mo. 152, 148 S. W. 877.

We have given consideration to the entire record, including the assignments not argued, as well as those covered in the briefs of able and astute counsel, and from our review of the whole record we are convinced that the defendant has not been prejudiced in any substantial right, and we therefore conclude that the judgment of conviction ought to be affirmed.