## No. 17,467.

### LEONARD McRAE *v.* PEOPLE OF THE STATE OF COLORADO.

(281 P. [2d] 153)

Decided March 21, 1955.   Rehearing denied April 4, 1955.

Messrs. COOK, RYAN & SHEA, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy Attorney General, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

LEONARD MCRAE was charged with the crime of aggravated robbery. Upon arraignment he entered a plea of not guilty; was tried to a jury, which found him guilty as charged, and was by the court sentenced to serve a term in the state penitentiary. He brings the cause to this Court by writ of error seeking a reversal of the judgment.

It is disclosed by the record that the Safeway store at Loveland, Colorado, was, on March 27, 1953, closed shortly after 8 o'clock p.m., and as the last employee was leaving he was accosted by two armed gunmen who inquired of him if he had the keys to the store. Upon being informed that the employee did not have the keys, he was directed to accompany the armed gunmen to the house of another employee who had the keys to the store and the safe. The two Safeway store employees then were ordered to precede the gunmen to the Safeway store and were there compelled to unlock the doors of the store and the safe. The gunmen searched one of the employees, took his money, but it was returned to him later, and the two employees were told that if they did as directed they would not be harmed; otherwise they would be the first to "get it." One compartment of the safe was unlocked by one of the employees, but the other compartment was broken into, and all of the contents of the two compartments were taken by the armed gunmen, who left the Safeway store after having chained the two employees together. During the entire period the gunmen wore nylon stockings as masks.

The employees telephoned police officers, and shortly thereafter Loveland's chief of police and others came to the store, released the two employees, and made an investigation which disclosed two compartments of the safe in which money was kept were emptied, and they were then advised that the car in which the gunmen had

departed was parked in a certain location. Upon investigating they distinctly saw the tire marks of one wheel of the gunmen's car.

On the morning of April 2, 1953, defendant was arrested in Englewood, Colorado, and taken to the Denver police headquarters, where he was questioned concerning the Safeway store robbery by William E. Flor, captain of detectives, and other Denver police officers. When defendant was arrested he had in his possession a bank money order for $650.00, dated March 31, 1953, and $68.00 in currency. No search of defendant's home in Englewood was made by the arresting officers.

Captain Flor testified that he questioned defendant about the Safeway store robbery, and he denied participation therein; denied that he owned a gun; that he had in his possession narcotics or was an addict; when asked about the $650.00 bank money order and the currency he had in his possession at the time of his arrest, he replied that it was money which he had earned when he was confined in the State Penitentiary at Canon City. Upon this answer being made, defendant's counsel moved for a mistrial, and after hearing counsel on this motion in chambers and out of the presence of the jury, it was denied.

Subsequently, defendant, upon being questioned as to the source of the money in his possession, and particularly that used in the purchase of the bank money order, he replied that his sister had sent him $1000.00 after he was released, and that that was used in purchasing the money order. Upon being questioned again about the bank money order and the cash which he had on his person at the time of the arrest, he said a man on Seventeenth street had given him $750.00 with which to go into the television business, but that he didn't know the man's last name but could find him if released for that purpose.

On the morning of April 3, 1953, defendant again was questioned by Captain Flor in regard to his possession

of a gun, and, in the presence of defendant's wife, he admitted that he had a .38 automatic type gun, and this, according to the People's witnesses, was the type of gun used by one of the two gunmen in the Safeway store robbery. Defendant explained that he had purchased a gun from an ex-convict, but refused to disclose the name of the man because it would get him into trouble. At a later questioning of defendant he stated that he knew a man who was involved in the Safeway store robbery and would produce him if released for that purpose.

Defendant stated to Captain Flor that the leader of the two men who robbed the Safeway store was one whose initials were J.G. and that the second man was unknown to him; that J.G. received $1700.00 for his share of the robbery, and that the other man received $1300.00.

Just before defendant was released to the custody of the sheriff of Larimer county, he stated to Captain Flor and Sheriff Barger that he did not want to return to Fort Collins and would prefer being tried in Denver. He stated that he had "pulled" the Howask Pharmacy job, but that being outside of the Denver jurisdiction, he did not care to further talk about it.

Other police officers were called to testify to conversations held with McRae, and corroborated Captain Flor's testimony in many respects, although they were not present at all of the questioning between the captain and defendant.

Sheriff Barger, of Larimer county, took possession of defendant's Hudson automobile and made a plaster paris cast of the tire on the wheel that had left a mark when it was driven by the gunmen from the place parked during the robbery. The imprint on the roadway was called to the attention of Sheriff Barger and the chief of police on the night of the robbery, but no photograph or cast was taken thereof because of the shallowness of the print. The plaster paris cast was offered in evidence, and admitted after the sheriff had identified it as a cast of

the particular wheel on defendant's automobile, and after the chief of police had testified that the cast was of a tire similar to the one which he had carefully observed on the night of the robbery.

The two Safeway store employees were called to Denver on April 4th and were present at a police "line-up," at which time they identified defendant as one of the robbers. At the trial they testified that he was one of the men who participated in the robbery and that the gun, which defendant admitted he owned, was similar to the gun used by one of the gunmen in the robbery.

Defendant's employer was called as a witness and testified that defendant had been working as a commissioned salesman; that he was indebted to his employer, and that during the month in which the robbery had taken place the commissions earned by defendant were $75.00. He also testified that defendant had shown him the bank money order for $650.00, and at one time stated that it "came from a man who was going to co-sign" for him in connection with a television business, and at another time that the money used in purchasing the bank money order came from "some property he had sold in California." This witness testified that defendant had received his permission to take the afternoon of March 27th off in order that he might go to Pueblo.

After the People rested their case, defendant's counsel moved for a directed verdict, which motion was denied.

Counsel for defendant called two witnesses, one of whom testified that on March 27th defendant was at his home in Englewood and that he had visited with him from about 4 o'clock p.m. until 6:30 or 7 o'clock p.m. The other witness was a young lady, a cousin of defendant's wife, who testified that she went to defendant's home at a quarter of nine o'clock on March 27, 1953, and remained there until about 1 o'clock a.m. the following day, and that during all of that time defendant was present with his family and two other guests. Defendant did not testify.

■■ At the outset we call attention to the fact that our court rules with reference to assignments of error, abstracts and briefs in criminal cases have been wholly disregarded in the instant case. The record was filed in this Court on August 12, 1954; the assignment of errors filed on December 20, 1954; plaintiff's first *typewritten* brief filed on October 11, 1954. There is in the record in this Court no abstract. We also call attention to the fact that in criminal cases the rules of civil procedure adopted by this Court, effective April 6, 1941, contain an express provision that "Criminal procedure in the Supreme Court shall be under the practice heretofore existing [order of Supreme Court January 6, 1941]." The rules effective in criminal cases require the filing of assignments of error at the time of the filing of the record; fifteen printed copies of an abstract of record, and printed briefs. We have, however, notwithstanding the failure of defendant's counsel to properly present his case in this Court, determined to entertain jurisdiction.

The assignments of error are twelve in number, but the only one which we deem of sufficient importance to determine is "The Court erred in allowing several witnesses to testify that plaintiff in error had been in the penitentiary."

The circumstances under which this evidence came before the jury have hereinbefore been related, and, it should be remembered, was part of the conversations between defendant and Captain Flor, chief of detectives, other police officers, and defendant's employer. It is disclosed by the record that defendant's answers were freely and voluntarily given. When defendant was asked on several occasions to disclose the source of the money with which the bank money order was purchased and the $68.00 in currency found on his person, he freely and voluntarily interjected into his answer the fact that he had been an inmate of the state penitentiary, and it was while there, he stated on one occasion, that he had earned it.

Counsel for defendant raised no question whatever about the right of the police officers to interrogate defendant with reference to the robbery of the Safeway store, or to the defendant's possession of the bank money order and currency found on his person at the time of his arrest, or his possession of the gun. The assignment with which we are here concerned is the admission of evidence disclosing that defendant himself had stated that he had been an inmate in the state penitentiary. This assignment is rather ineptly made because the officers did not testify that defendant had been an inmate of that institution. Their testimony was that he told them he had been, and this while being interrogated in connection with the Safeway store robbery. This constituted an admission on defendant's part against interest. It was voluntarily made in the course of a conversation, the entirety of which was admissible in evidence (see decisions hereinafter cited), particularly so when the answer was not in anywise prompted in reply to any question.

We hold that it is a generally accepted rule of law, approved by this Court in its decisions, that if a statement made by the defendant in a criminal case is admissible in evidence as an admission or declaration, it is admissible as an entire statement, including the parts thereof which are favorable as well as the parts which are unfavorable to the party offering the same in evidence, and where, as in the present case, the evidence discloses that defendant's statements were made without threat, compulsion, coercion, inducement or anything akin thereto, they are admissible against him although at the time of such statement he was under arrest charged with an offense, and the rule is the same in respect to written or oral confessions. *Potyralski v. People,* 53 Colo. 331, 124 Pac. 742; *Rogers v. People,* 76 Colo. 181, 230 Pac. 391; *Taylor v. People,* 77 Colo. 350, 237 Pac. 159; *Wilder v. People,* 86 Colo. 35, 278 Pac. 594; *Hamilton v. People,* 87 Colo. 307, 287 Pac. 651; *Williams v. People,*

312

114 Colo. 207, 158 P. (2d) 447; *Schneider v. People,* 118 Colo. 543, 199 P. (2d) 873; *Commonwealth v. Green,* Supreme Judicial Court of Mass. 20 N.E. (2d) 417; *Taylor v. State,* Criminal Court of Appeals of Okla. 240 P. (2d) 803; *People v. Hurry,* 385 Ill. 486, 52 N.E. (2d) 173; 7 Wigmore on Evidence (3d ed.) p. 529, sec. 2115; 20 Am. Jur., p. 463, sec. 551; 3 Wharton, Criminal Evidence (11th ed.) p. 2177, sec. 1305; 22 C.J.S., p. 1266, sec. 735.

■ We characterize the statement of defendant relative to his incarceration in Canon City as voluntarily interjected in his answer without suggestion thereof by the officers who were interrogating him, and if an answer such as was given is held to be prejudicial error, it would be an invitation to every defendant on trial on a criminal charge to at some time voluntarily interject an answer disclosing a former conviction and thereby become entitled to a new trial. The entire conversation between defendant and the police officers relating to a criminal offense was admissible in evidence, the exculpatory portions thereof being for the defendant's benefit and the inculpatory portion being adverse to him. Under the circumstances in this case, the admission of this evidence was not for the purpose of attacking defendant's credibility; if it had been offered for that purpose defendant, not having taken the witness stand on his own defense, it would constitute, as we have held, reversible error. The record discloses that defendant had a fair and impartial trial, with no reversible error committed therein.

Accordingly, the judgment is affirmed.

MR. JUSTICE CLARK does not participate.