## No. 18,408.

JAMES P. THOMPSON, ET AL *v.* PEOPLE OF THE
STATE OF COLORADO.
(336 P. [2d] 93)

Decided March 2, 1959.

Mr. Francis P. O'Neill, Mr. Walter L. Gerash, Miss Dorothy E. Binder, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Elwood Eugene Haas, Eugene Harvard Roadhs and James P. Thompson were charged with, tried for, and convicted of, robbery and conspiracy to commit robbery. Plaintiffs in error, Haas and Thompson, filed their joint amended motion for a new trial. Following its denial, the trial court sentenced Haas and Thompson respectively to terms of seventeen to twenty years and fourteen to seventeen years in the penitentiary. It is these judgments and sentences which we are asked to reverse by this writ of error.

As grounds for reversal Haas and Thompson assert (1) that they were deprived of a fair trial in contraven-

tion of Article II, Sections 16 and 25, of the Colorado Constitution, and Section 1 of the 14th Amendment of the Federal Constitution, because of a non-consensual representation by counsel who failed to prepare adequately for, and present, a defense against the charges laid; (2) that prejudice resulted to them when the trial court refused to declare a mistrial after a witness for the People testified to a statement said to have been made by Roadhs regarding his "release"; (3) that their defense was damaged by the refusal of the trial court to permit their counsel to make an opening statement; and (4) that the trial court erroneously instructed the jury concerning an accessory when the record was destitute of evidence warranting its submission.

In relation to the first ground of error, the record reveals that Haas and Thompson had employed John J. Gibbons to represent them in their defenses to the accusations made, and in the course of this employment had discussed with him their pleas to the charges against them. Mr. Gibbons had Bruce Ownbey, an attorney who theretofore had associated with him in a number of cases, request a continuance, and further, had him confer with Haas and his "girl friend" preparatory to trial.

Together these attorneys discussed the material which their investigations had uncovered, and together they had determined upon the course of action to be pursued in presenting the defense. When the case came on for trial, Mr. Gibbons was in the midst of litigation elsewhere, and Mr. Ownbey undertook the defense. No objection was ever expressly lodged against Mr. Ownbey's activity in the case, either to the court or to the attorneys, until after the return of an adverse verdict.

In general this is the testimony given at a hearing held after the trial of the offenses charged against the defendants. Additionally, the trial court considered what it had observed and heard during the trial of the offenses in order to properly pass upon the question presented.

The trial court recalled that none of the defendants was called as a witness at the trial; that Mr. Ownbey alone represented the defendants during the three days consumed in trying the case, but that Mr. Gibbons consulted with Mr. Ownbey, the defendants and their relatives at different times as the trial progressed; that the defendants in no way indicated to the court that they expected Mr. Gibbons personally to present their defense or that they objected to Mr. Ownbey acting alone for them.

At the conclusion of the hearing the trial court found "that counsel very adequately and ably represented the defendants at this trial." In denying the motion for new trial, grounded in part upon this point, the trial judge said, "These men have had very adequate representation and they have been deprived of no rights under either the State of Colorado Constitution or the Constitution of the United States * * * "

We are in accord with the ruling of the trial court; a reading of the record in this case is persuasive that the defendants were ably represented. In fact, the evidence in support of the motion for new trial was directed in great measure toward the proposition that Mr. Ownbey had been foisted upon the defendants as their trial attorney, and relatively little evidence adduced to support the allegation of inadequate preparation for, and presentation of, the defense.

There is nothing in the record which moves us to hold that the trial court erred in determining that the defendants were properly represented; indeed, in failing to apprise the court of the contract with Mr. Gibbons, and of their objections to Mr. Ownbey undertaking the defense, under the circumstances here present, they are in no position to complain. These circumstances spell out acquiescence.

Employment of an associate to conduct the defense of a criminal charge, where the attorney originally hired is engaged in the midst of another trial making his

discharge of duty impossible, is not an impropriety, and the client will not be heard to complain if he stands by, permits the case to be tried, and objects for the first time after receiving an adverse decision. *Fenno v. English,* 22 Ark. 170. *Roberts v. Denver, etc. R. Co.,* 8 Colo. App. 504, 46 Pac. 880; *Allen v. Parrish,* 65 Kans. 496, 70 Pac. 351; *Jones v. Jones,* 72 Wash. 517, 130 Pac. 1125, suggest the principle stated.

■ As a reviewing court it is our function to inspect the record for the purpose of ascertaining whether the findings of the trial court have support in the evidence, and whether proper application of the law has been made to the findings. It is our duty to sustain such findings where the record discloses substantial evidence sustaining them. Viewing the evidence and findings in such favorable light, we hold the first point urged as ground for reversal not well taken.

In order to understand the second point of alleged error, we deem it essential to quote pertinent portions from the record as they unfolded while Officer Scheer was testifying:

"Q. Do you remember what was said by any particular one of the defendants? A. Yes. All three steadfastly denied any connection with it. J. J. Thompson said he was steadily employed with his own business. Q. Did he say what his business was? A. Yes, stated he was a garbage collector — had his own business. Haas made no statement of what type work he had done. Mr. Roadhs stated he has just been released three days previously. Mr. Ownbey: I object, your honor.

\* \* \*

"Mr. Ownbey: If the Court please, comes now the defendants by their attorneys, and hereby request that the Court declare a mistrial by reason of the fact that the witness Scheer, for the People, has stated that Mr. Roadhs had been recently released. I believe that is all the further the statement went. However, it is clear, I feel, that to the jury that would impart he had been re-

leased from some type of confinement, particularly that of prison. I feel the harm has been done and it cannot be rectified by admonishing the jury to disregard the statement. Mr. Smedley: We all have fresh in mind exactly what happened out there. The witness did start to make a statement. He was promptly halted in making a statement. He did not state from what he was released. I believe it is Mr. Ownbey's conclusion that the only deduction from what was said was that he was released from incarceration; he could have been released from the Service or from his employment. The Court: The way the jury jumped up, the jury got a pretty good idea it wasn't a hospital or such. The flurry over the thing, there couldn't have very well been any thought about being released from a hospital or anything like that, or the Service, as you say. I am going to take this matter under advisement between now and 1:30, during the lunch recess. Of course, it should not have been said but I understand how these things slip out. No one is to blame."

At the resumption of proceedings the trial court overruled the motion for a mistrial, basing his ruling on the case of *McRae v. People,* 131 Colo. 305, 281 P. (2d) 153.

Interrogation of the defendants was subsequently shown to have been made separately, and apparently the statement made by Roadhs, "that he had just been released three days previously," was elicited at one of these sessions. At no time did the trial court instruct the jury to disregard this testimony, nor did the court charge the jury that it could only consider the statement as it might relate to Roadhs, and that it could not consider it for any purpose as against Haas and Thompson.

It may have been proper to admit the testimony of Officer Scheer relating that Roadhs admitted just being released, and limiting its effect, if any, to Roadhs. *McRae v. People,* supra, apparently sanctions the practice of receiving such statements as they affect the defendant reputedly making them. But the statement in

question had nothing to do with the furtherance of the conspiracy, was made out of the presence of Haas and Thompson, and "while the evidence was competent against the party making the statement or declaration, it was not competent evidence against the other [parties]." *White v. People,* 79 Colo. 261, 245 Pac. 349.

An objection and exception, or a motion, general in nature, or as is sometimes said, a joint objection, exception, or motion, must be good as a whole. *Webber v. Emerson,* 3 Colo. 248. Where multiple defendants are being tried together, a general or joint objection made on their behalf, to testimony which is properly receivable as against one defendant, is ineffectual and must fail of its purpose. *Howson v. State,* 73 Ark. 146, 83 S.W. 933; *Com. v. Johnson,* 199 Mass. 55, 85 N.E. 188. Moreover, where a damaging statement of one is admitted in evidence, it is the duty of the others who are on trial with him, if they want its scope limited, to ask then and there for an instruction so confining it, instead of making a general objection to the statement. *Howson v. State,* supra.

Counsel for the defendants reserved the right to make an opening statement at the conclusion of the People's evidence. At that point he advised the trial court that he would introduce no evidence, but that he desired, nevertheless, to make an opening statement. Was the trial court's denial of his proffer to make an opening statement for the defendants error? The answer to this question resolves the third point urged for a reversal by Haas and Thompson.

An opening statement, whether in a criminal or civil action, has a long-recognized purpose. Its function is simple and single — to inform. *Mulligan v. Smith,* 32 Colo. 404, 76 Pac. 1063. And the information to be conveyed by the maker of the statement should be a clear, direct and factual presentation of the matters he expects to prove.

Elucidation of the place an opening statement has in

the trial process negates the charge of error on this point. And now we shall consider the fourth point urged by Haas and Thompson.

Two men, with heads and faces covered by women's mesh stockings in which were slits to enable them to see, entered the Esquire Lounge at about two o'clock in the morning, threateningly brandished a gun and ordered all persons present to lie down on the floor or put their heads on the bar at which they sat. To impress upon those present that they meant business the gun was fired, the bullet creasing the ceiling overhead.

The taller of the two men wore clothing of a delineable character. All of the defendants were arrested a few minutes after the robbery, and one of them was of the height and wore clothing fitting the description of the man noticed in the tavern.

These three men in a Mercury car were arrested near the scene of the robbery. One of them pulled a gun and levelled it at one of the policemen, but dropped it at the command of a co-policeman. In the car were found another gun and ladies' stockings with slits in them. At police headquarters Thompson tried to remove $232.15 from his right hand pocket, and as he did so it fell to the floor. This sum was a little short of the amount reported to have been taken in the robbery.

Did this evidence warrant the trial court in giving an instruction defining accessory? We hold that it did. A positive identification of any of the three defendants except Haas was not possible because of the masks they wore. Haas' identity was proven circumstantially by his height and the clothes he was wearing. The others were arrested in his company, with the tools, equipment and proceeds in their possession. Only two men entered the tavern; three were in the car at the time of the arrest. The circumstances narrated support our resolution of this question.

The Esquire Lounge is located on the corner of East Colfax Avenue and Williams Street in Denver. A car

was parked south of the lounge on Williams Street, as revealed by freshly fallen snow, and at this point a lady's mesh stocking was found on the pavement. Footprints in the snow leading from the lounge toward the parked car were detected by one of the witnesses.

All of these facts and circumstances were before the jury, and it was within its province to determine whether any one of the three men was an accessory.

Finding no error in the record, we affirm.

Mr. Chief Justice Knauss not participating.