No. 20145.

ALBERT JOSEPH KOSTAL v. THE PEOPLE OF THE STATE OF COLORADO.
(414 P.2d 123)

Decided May 9, 1966. Rehearing denied May 31, 1966.

Jim R. Carrigan, George Alan Holley, William D. Neighbors, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John P. Moore, Assistant, George H. Sibley, Special Assistant, for defendant in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

Albert Joseph Kostal and Arthur Jerome Watson were jointly tried and convicted of murder in the first degree, with each being sentenced to death. Upon review these judgments were reversed and the causes remanded for a new trial. See *Kostal, et al. v. People,* 144 Colo. 505, 357 P.2d 70.

Kostal thereafter sought and obtained a separate trial from his codefendant, Watson. Upon a retrial of this matter Kostal was again convicted of murder in the first degree, with the jury on this occasion fixing his punishment at life imprisonment in the state penitentiary. By writ of error Kostal now seeks reversal of this judgment and sentence.

In the interim Kostal's codefendant, Watson, has now also been retried in a separate trial and he too was convicted of murder in the first degree, with punishment fixed at life imprisonment. Upon review this judgment was affirmed. See *Watson v. People,* 155 Colo. 357, 394 P.2d 737.

At this juncture no recital, as such, of the facts and circumstances surrounding the commission of the crime with which Kostal stood charged, *i.e.*, the murder of one Isley, is deemed necessary. Therefore, reference to the evidence adduced upon trial will only be made where such is deemed necessary to an adequate understanding of the matters raised by Kostal in the present writ of error. For general background material, see *Kostal, et al. v. People, supra.*

Kostal's various assignments of error closely parallel those which were heretofore unsuccessfully urged in *Watson v. People, supra,* and are summarized as follows:

1. the refusal of the trial judge to disqualify himself from presiding at the retrial of this case;

2. the refusal of the trial court to dismiss the panel of prospective jurors and order a mistrial because of certain press, radio and television releases which are claimed to have been highly prejudicial;

3. the refusal of the trial court to appoint in behalf of Kostal a psychiatrist, a private investigator, and "ballistic experts equal in number to those of the State";

4. various interlocutory rulings of the trial court relative to the admission or rejection of certain testimony and related evidentiary matter;

5. refusal of the trial court to instruct the jury that the identification of Kostal by eyewitnesses to the murder was not a "fact," but only the expression of an "opinion"; and

6. the allegedly improper remarks made by the district attorney in his closing argument.

Prior to the retrial of this case, counsel for Kostal petitioned the trial court for permission to purchase, at state expense, a copy of the transcribed record of the proceedings which occurred during the first trial of Kostal and Watson. This request was granted by the trial court. Hence, in considering certain of the points now urged by Kostal, it is deemed important to keep in mind that during the retrial of the matter counsel

presumably had before him, for such reference or use as he deemed fit and proper, all of the testimony given at the first trial. We shall now proceed to consider the various grounds urged by Kostal in the present writ of error.

Prior to the time that Kostal was granted a separate trial, Kostal and Watson filed a joint motion wherein they requested that the Honorable Christian D. Stoner, hereinafter referred to as the trial judge, be deemed "incompetent" to preside over the trial of their case on the ground that he was either "interested or prejudiced," as those words are used in C.R.S. 1963, 39-9-2. In this regard it was alleged that both Kostal and Watson had theretofore instituted an action against the trial judge in the United States District Court for alleged violation of their civil rights. Kostal additionally averred that he had also brought an action based upon C.R.S. 1963, 65-1-11 and 17 against the trial judge in the county court for Jefferson County, these particular statutes having to do with the improper removal of a prisoner from a county jail and providing for the forfeiture to such an aggrieved party of a sum not to exceed three hundred dollars.

Upon oral argument of the instant case it was disclosed that both of the aforementioned actions have now been finally resolved and in each instance adversely to Kostal. But counsel argue that this fact in nowise alters the situation, and that on the showing made in the petition the trial judge should have disqualified himself. The argument is that the trial judge was "interested" in the outcome of the retrial of this matter because it was to his "pecuniary advantage" that Kostal be found guilty, on the theory that "a man convicted of murder by a jury would face insurmountable difficulties in showing his imprisonment was unlawful and obtaining an award from a jury." To us this argument seems somewhat tenuous and "iffy" at best.

This same general contention was considered

and rejected by us in *Watson v. People, supra*. The only factor in the instant case, not present in the earlier case, is that Kostal, in addition to his action in the United States District Court for $10,000 damages, also had pending an action in the county court for Jefferson County wherein he sought damages in a sum not to exceed three hundred dollars. And in our view this additional factor is not possessed of sufficient legal significance to change the result reached in the *Watson* case. In that case this court stated that the filing of sham or frivolous actions in which a judge is made a party for the sole purpose of disqualifying him in the trial of another case should not be allowed. We further stated that in order to work a disqualification of a judge, the interest must be direct, apparent, substantial, certain or immediate, and not one which is only indirect, contingent, incidental, remote, speculative, unreal, uncertain, inconsequential or merely theoretical. On the basis of this test we now hold that the trial judge committed no error in denying Kostal's motion to disqualify him from presiding at the retrial of this case.

Kostal next argues that the trial court committed error in its refusal to dismiss the entire panel of prospective jurors and to thereafter declare a mistrial, because of certain press, radio and television releases which occurred while the jury was in the process of being impaneled. Parenthetically, it should be noted that from the record it is apparent that at the commencement of the voir dire examination of the prospective jurors, the jurors were all cautioned by the trial court that they should not read newspaper articles regarding the trial or listen to or view any radio or television coverage of events pertaining to the trial. Kostal's chief complaint in this regard goes to certain newspaper stories, published while the jury was being impaneled, to the effect that the then sheriff of Jefferson County had just uncovered certain preparatory efforts on the part of Kostal looking toward his escape from the county

jail and of certain threats allegedly uttered by Kostal when his efforts in this connection were discovered. None of these several news stories in any manner related, as such, to the alleged facts and circumstances attendant to the substantive crime with which Kostal then stood charged.

Furthermore, as we understand it, Kostal makes no complaint as to any ruling of the trial court in connection with any of his many challenges for cause. As we read the record of the voir dire examination of the prospective jurors, the trial court was really quite readily disposed to sustain Kostal's various challenges for cause and accordingly excused those jurors who indicated even the slightest inability to lay aside preconceived notions based on pretrial publicity going to the guilt or innocence of Kostal. It should also be noted that Kostal exercised only thirteen of his peremptory challenges.

Rather, it is Kostal's position that it was the overall "climate" in which the jury was selected that precluded him from obtaining a fair and impartial jury. We do not so view the record. Indeed, our perusal of the voir dire jury examination consisting of some 1361 folios convinces us that such is simply not the case. There is nothing in this record to indicate that the panel of prospective jurors was in any degree whatsoever impassioned or inflamed against Kostal because of any newspaper articles, regardless of the time when such had been published. And whether such a condition existed, could only be determined by the various statements made by prospective jurors to the queries of counsel and the court. In determining the credit and weight to be given to a juror's statements made in the course of voir dire examination it should be remembered that the trial judge, and not the reviewing tribunal, sits in the preferred vantage point. The trial judge — and not this court — actually hears the questions put to the prospective jurors and the answers given thereto. It is the trial judge who observes a juror's

demeanor while he is being thus interrogated and it is the trial judge who discerns, through the use of his eyes, ears and intelligence, where the truth lies and credit should be given. See *Leick v. People,* 136 Colo. 535, 322 P.2d 674. Suffice it to say that we find no error in regard to any ruling of the trial court in connection with the impaneling of the jury.

█ Kostal next assigns as error the refusal of the trial court to appoint a psychiatrist, a private investigator, and ballistic experts "equal in number to those of the state." This identical matter has heretofore been considered and rejected by us in *Watson v. People, supra.* Hence, no more need to be said regarding this point in the present opinion.

Kostal's next general assignment of error goes to the correctness of the trial court's various interlocutory rulings relative to the admission, or rejection, of certain testimony and related evidentiary matters. This particular ground will be subdivided as follows:

1. the refusal of the trial court to require the district attorney to produce for inspection and use by counsel for Kostal, statements made to investigating officers very shortly after the homicide by certain eyewitnesses to the crime;

2. the refusal of the trial court to receive into evidence upon cross-examination of certain of these eyewitnesses a "composite" drawing of "suspect No. 1," as made by a Denver police officer based upon the description given him by several eyewitnesses;

3. permitting the People's ballistic evidence to even be considered by the jury;

4. in refusing to declare a mistrial when a witness testified that Kostal informed him that the gun which was in Kostal's possession when he was arrested in Kansas City, Missouri was obtained by him "out of a gun shop in Los Angeles after breaking a window";

5. in permitting the People to offer evidence to prove the fact that Isley died as the result of a criminal agency,

when Kostal was willing to stipulate and admit to such; and

6. in permitting two Denver police officers to testify as to their pursuit of an automobile in which Kostal was purportedly effecting his escape from the Jefferson County jail.

The eyewitnesses to this homicide testified upon trial that the robbery which culminated in the killing of Isley, a privately employed merchant policeman who unfortunately came upon the scene while the robbery was still in progress, was perpetrated by two Caucasians who had blacked up their faces so as to give the appearance of Negroes. It was Kostal's theory that when these several eyewitnesses were first interrogated by police officers shortly after the homicide, each on that particular occasion had advised the authorities that the robbery was perpetrated by two colored persons, or Negroes; and that none had advised the officers that the robbers were white persons who were only "blacked up." If such were the actual case, then of course this fact would be clearly admissible as a prior utterance inconsistent with their testimony upon trial.

Upon the cross-examination of certain, though not all, of these eyewitnesses, counsel indeed established that the witness a few hours after this felony murder had made a formal statement to an officer named Nelson in which a description of the two robbers was given. Counsel thereupon demanded that the district attorney produce such statements for inspection and use. The trial judge summarily denied this request and counsel thereupon dropped the matter completely. The record does not disclose just why such action was taken by the trial court. And the denial of this request is somewhat surprising, in view of the fact that these statements were readily produced in the two prior trials of this matter.

The denial of this request might well be error *if* the requested statements were then in the custody or under

the control of the district attorney. Actually the record is so meager that from a reading thereof we, as the reviewing court, have no way of knowing whether or not the district attorney really did have the custody or control of the requested documents. We may surmise that he did have possession or control of these statements, but from the record before us we do not *know* that such is the case. Hence, counsel's record is inadequate in this regard.

Be that as it may, when this particular problem is reviewed in its context, however, we are convinced that Kostal was not really prejudiced and that the error, if any, was at best only error in a vacuum.

As noted at the outset of the opinion, prior to the second trial counsel for Kostal asked the trial court that he be furnished a copy of the testimony given in the first trial of this matter. This request was granted. Examination of that record discloses that during the first trial these statements were upon demand produced, and formed the basis for extended cross-examining questions. Indeed, in that first trial the technique used was to read verbatim the purported statement of the eyewitness and then inquire as to whether that was his answer on that earlier occasion. Hence, counsel at the time of his request during the second trial of this case apparently knew full well — not just the substance of these statements — but virtually the precise statement as theretofore made by the several eyewitnesses. This is also evidenced by the fact that from the questions asked upon cross-examination during the second trial of this matter it becomes rather clear that counsel in fact was quite familiar with the statements of these several eyewitnesses as made to officer Nelson a few hours after the felony murder.

Nor did counsel deem it necessary to examine officer Nelson as to the physical description given him by the eyewitnesses, as could have been done if counsel had been so disposed. To reverse this case on the ground

that the trial court should have ordered that these statements be produced for inspection by counsel for Kostal, when counsel already had access to the record as made upon the first trial of this case, which record recited therein the content of such statements, would amount to nothing more than a bootstrap operation. In a very real sense this, then, is but an instance where the trial court merely refused to give counsel that which he already had. Hence, all things considered, no reversible error occurred in that regard.

Upon cross-examination of these eyewitnesses it also developed that certain of them a few days after the crime had given a verbal description of the one robber who had actually killed Isley to a Denver police officer, who, in turn, based on this information then drew a composite picture of the person so described. This drawing, counsel claimed, depicted a Negro, and not a Caucasian. Counsel offered into evidence this drawing during his cross-examination of these eyewitnesses. This tender was denied on the ground that there was insufficient identification of the exhibit. Thereafter, as part of Kostal's case, the police officer who drew this picture was called as a witness. He identified his handiwork as having been based on the descriptions given him by certain eyewitnesses to the commission of the crime, and the exhibit was then offered and received into evidence. The trial court clearly did not err in its handling of this matter.

Alleged error is next predicated upon the refusal of the trial court to strike all of the People's "ballistic" evidence. It is said that such evidence is so "contradictory" and "inconclusive" that the jury should not have been permitted to even consider it. We do not so view this matter. Nor do we deem it necessary to go into any detail to demonstrate our reasoning. Suffice it to say, this line of testimony was quite properly before the jury, with the weight to be given it being of

course a matter exclusively reserved for the trier of the facts.

About one month after Isley was murdered Kostal was arrested in Kansas City, Missouri. A Kansas City police officer testified upon trial as to the circumstances surrounding the arrest and also testified concerning a .45 automatic pistol in Kostal's possession at the time of his arrest. When asked whether Kostal had informed him as to where he (Kostal) got the gun the witness replied: "He said he got it out of a gun shop in Los Angeles after breaking a window." Counsel immediately moved that the answer be stricken on the ground that this court had already ruled in *Kostal, et al. v. People, supra,* that such was inadmissible evidence. This motion the court promptly granted and the jury was instructed to disregard the answer. Thereafter counsel moved for a mistrial, and this request was denied. It is said that this ruling necessitates a third trial of this matter. We do not view the matter as being of any great import. When viewed in context, it is actually quite minuscule.

In the instant case there is competent evidence to the effect that Kostal, along with Watson, stole a car in the Denver area and then robbed the Country Gentleman store of some $400; that in the course of the robbery Kostal in cold blood shot and killed Isley; that after Kostal was arrested and later placed in the Jefferson County jail he escaped therefrom, stole another car from a Golden, Colorado family at gunpoint and effected his escape; and that he was later apprehended by the F.B.I. in New York City where he resisted arrest by drawing a gun and threatening to kill the arresting officer. In the process of disarming Kostal, both the arresting officer as well as Kostal were shot. In the face of this rather strong *prima facie* showing of criminality, it is inconceivable that the jury was in anywise prejudiced or motivated to return the verdict which it did because of just four words volunteered by the Kan-

sas City police officer to the effect that Kostal told him that he got the gun out of a gun shop in Los Angeles "after breaking a window." The jury was quickly told by the trial judge to disregard the answer given, and we must presume that the jury followed this admonition. To hold the contrary would evidence little faith in the intelligence and integrity of jurors in this state.

 Several persons testified to the fact that Isley's death was the result of a gunshot wound in the head. Kostal urges that there was error in receiving such testimony in view of his willingness to stipulate and admit that Isley was dead and that his death was the result of *someone's* criminal act. A defendant cannot thus hamstring the district attorney in the presentation of the state's case. The evidence was both proper and material. And an admission by a defendant does not preclude the state from presenting separate and independent proof of the fact admitted. *Bizup v. People,* 150 Colo. 214, 371 P.2d 786.

 Finally, as regards the various rulings of the trial court on evidentiary matters, error is urged in connection with the testimony of two Denver police officers as to their chase of the car in which Kostal allegedly perfected his escape from the Jefferson County Jail. It was undisputed that Kostal and Watson after escaping from the jail proper, stole an automobile from a Golden, Colorado family. This car was later spotted in Denver by police who immediately gave chase. They testified that there were two persons in the car and they further testified as to the details of their high speed pursuit of this vehicle. The car soon came to a careening halt, and the two occupants fled in opposite directions. The driver was immediately apprehended, and he turned out to be Watson. The other person successfully eluded the police. Because neither of the police officers could testify that the other occupant of the vehicle was Kostal, it is now claimed that for this reason this evidence should not have been received. With

such theorizing we do not agree. Suffice it to say, in our view there is ample evidence, both direct and circumstantial in nature, to establish that it was Kostal who was with Watson on this wild ride through the streets of Denver. And we have already held in *Kostal, et al. v. People, supra,* that the fact of Kostal's escape from jail was admissible in evidence.

As regards instructions, Kostal's only complaint concerns the refusal of the trial court to give a tendered instruction to the effect that identification of "one stranger by another" is merely a statement of opinion, and is not a statement of fact. Our attention has been directed to no case where an instruction to this effect has ever even been tendered, let alone actually given the jury. In our view this is a matter which need *not* be covered by instruction, but should be left for counsel to argue to the jury, as he did, in his evaluation of the evidence. Finally, this precise point was also raised in *Watson v. People, supra,* and although we did not specifically comment on this particular matter in that opinion, we nonetheless did reject the argument with the general observation that "other points" raised were held to be without merit.

Kostal's remaining assignment of error concerns allegedly improper statements made by the district attorney in closing argument. From a procedural standpoint, this point is improperly raised. In one instance, there was no contemporaneous objection to the allegedly improper comment; and in another instance where there was a contemporaneous objection, the matter was not thereafter urged in the motion for new trial. Regardless of any procedural defects, this particular matter from a substantive standpoint is without merit. The comment pertained to matters which were in evidence, and the fact that jurors might possibly draw certain unfavorable inferences therefrom does not render objectionable counsel's comment in connection therewith.

This was a hotly contested trial extending over a

ten day period of time. The district attorney vigorously presented the People's case, as he has every right to do. And by the same token, counsel for Kostal was equally vigorous in the defense of his client. In this type of situation there is the usual tug-of-war between counsel, with the trial judge being called upon to make quick decisions, and many of them. All of which renders *apropos* the following statement from *Walker v. People*, 126 Colo. 135, 248 P.2d 287.

". . . . Perhaps no trial of any extended duration is wholly free from irregularity in some respects, but only mistakes that materially and substantially affect a litigant's legal rights, and are prejudicial to his cause, justify reversal of the judgment . . . . If it be not prejudicial error, then it is not error in law. In this case, while many errors are alleged to have been committed during the course of trial, after searching the record we find none that could reasonably be said to have jeopardized, prejudiced or substantially affected the rights of defendant. Defendant was represented by able and zealous counsel who labored faithfully in behalf of his cause; he had a fair trial before an impartial judge and jury; he was found guilty of a revolting, senseless murder; there is nothing before us that justifies our interference with the judgment of the trial court. . . ."

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON not participating.