**No. 80SA145**

**The People of the State of Colorado v. Frank R. Lucero**

(615 P.2d 660)

Decided August 11, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, Morgan D. Rumler, Assistant Attorney General, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Terri L. Brake, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

The defendant, Frank R. Lucero, appeals his conviction for assault in the first degree on a peace officer, section 18-3-202(1)(e), C.R.S. 1973 (1978 Repl. Vol. 8), and his punishment as a habitual offender, section

16-13-101(1), C.R.S 1973 (1978 Repl. Vol. 8, 1979 Supp.).[1] The defendant represented himself at the trial and urges several grounds for reversal. His principal contentions are that he was denied his right to counsel and that the trial court erroneously denied his request for a trial continuance. We address these arguments but are not persuaded by them. However, we concluded that the court's reference to the defendant's prior convictions at the commencement of the trial proceedings and the admission of other evidence of bad character during the trial neccessitate a reversal and a new trial. Because of this disposition of the case, we deem it unnecessary to address other issues raised by the defendant.

On June 14, 1977, the defendant was charged by direct information with assault in the first degree by threatening a peace officer with a deadly weapon and with habitual criminality stemming from two prior felony convictions in 1976 for aggravated robbery. The charge of first-degree assault arose out of a confrontation between three inmates at the Colorado State Penitentiary and a prison guard on March 26, 1977. The defendant requested and the court appointed an attorney to represent him. After a preliminary hearing, this attorney was permitted to withdraw because of irreconcilable differences with the defendant. At the defendant's request, the court continued the case for several months to allow him to retain private counsel. He was unsuccessful in his efforts and, on January 9, 1978, he filed a written waiver of counsel and advised the court that he would represent himself. The court accepted the defendant's decision to represent himself but, over his objection, it appointed an attorney as advisory counsel to assist the defendant with trial preparation and trial in the event the defendant requested such assistance.[2] This attorney was permitted to withdraw shortly after his appointment because of a possible conflict arising from his position as a hearings officer at the penitentiary. On January 26, 1978, the court appointed another attorney as advisory counsel, once again over the defendant's objection, and set the case for trial on May 31, 1978.

The defendant filed several motions on his own behalf, resulting in a further postponement of the trial. On October 6, 1978, the court, as it had done previously, asked the defendant if he desired an attorney, and the

---

[1] This appeal was transferred to this court from the court of appeals pursuant to section 13-4-110(1)(a), C.R.S. 1973.

[2] See, *e.g., Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975); *Reliford v. People,* 195 Colo. 549, 579 P.2d 1145 (1978). *ABA, Standards Relating to the Function of the Trial Judge* § 6.7 provides for the appointment of "standby" or advisory counsel. *See also* Note, *The Accused as Co-Counsel: The Case for the Hybrid Defense,* 12 *Val. L. Rev.* 329 (1978); Note, *Assistance of Counsel: A Right to Hybrid Representation,* 57 *B.U.L. Rev.* 570 (1977); Note, *Faretta v. California and the Pro Se Defense: The Constitutional Right of Self-Representation,* 25 *Am. U.L. Rev.* 897 (1976).

defendant once again insisted on his right of self-representation. The appointment of advisory counsel was reconfirmed, and the case was set for trial on February 5, 1979.

On the day of trial, immediately prior to jury selection, the defendant advised the trial judge that he was not prepared for trial and requested a postponement. The court conducted a hearing on the request and denied it. Advisory counsel was present and available to assist the defendant throughout the trial.

At the commencement of jury selection, the trial judge advised the jury panel of the charges, including the two prior felony convictions alleged in the habitual criminal counts. During jury selection and at practically every stage of the trial, the judge asked the defendant if he wanted assistance from advisory counsel. The defendant either rejected these offers or refused to answer the court.

During the trial on the substantive offense, the prosecution elicited testimony that the defendant was housed with the incorrigible prison population. In the course of the secondary phase of the trial, the prosecution presented evidence of several criminal acts committed by the defendant in addition to the two felony convictions alleged in the information.

The defendant asked no questions of jurors during jury selection, conducted no cross-examination of the state's witnesses, presented no evidence on his own behalf and made no summation to the jury. The jury found him guilty of assault in the first degree at the completion of the first phase of the trial, and thereafter determined that he had been previously convicted of the two felonies underlying the habitual criminal counts. The court sentenced the defendant to a term of twenty-five to fifty years consecutive to the sentences he was then serving.

## I. THE RIGHT TO COUNSEL

The defendant claims that he was denied his right to counsel and due process of law guaranteed by the United States and Colorado constitutions. His claims are based on three assertions: (1) he was not competent to the task of self-representation; (2) he requested an attorney during the trial and that request was denied by the trial court; and (3) the advisory attorney appointed for him did not effectively assist him in trial preparation or in the trial itself.

A criminally accused clearly has the right of self-representation. *U.S. Const.* Amend. VI and XIV; *Colo. Const.* Art. II, Sec. 16. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) the United States Supreme Court held that this right has its source in the structure and history of the Sixth Amendment. The right is personal to the defendant, and the value it furthers is that of personal autonomy:

"It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he

may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the life blood of the law.'" *Faretta v. California,* 422 U.S. at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 581.

*See also Russell v. State,* _____ Ind. _____, 383 N.E.2d 309 (1978).

■ The responsibility of the trial court when confronted with a request for self-representation is to ascertain whether the accused knowingly and intelligently decides to forego the traditional benefits associated with the right to counsel. *See e.g., Faretta v. California, supra; Reliford v. People,* 195 Colo. 549, 579 P.2d 1145 (1978); *Martinez v. People,* 172 Colo. 82, 470 P.2d 26 (1970). As long as the court is satisfied that the defendant "knows what he is doing and his choice is made with eyes open," *Faretta v. California, supra,* it must honor his request for self-representation even though the defendant lacks the technical knowledge, skill and experience of the lawyer. *E.g., Faretta v. California, supra; United States v. Price,* 474 F.2d 1223 (9th Cir. 1973); *Reliford v. People, supra.*

■ The record establishes that the defendant, fully understanding his constitutional right to counsel, knowingly, intelligently and voluntarily relinquished the benefits of counsel, and elected to represent himself.[3] Once having elected to represent himself, the defendant cannot thereafter whipsaw the court between his constitutional right of self-representation and his own ineffectiveness at trial. For "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot

---

[3] Counsel was originally appointed for the defendant on June 28, 1977, shortly after the filing of charges. This attorney filed several motions and represented the defendant at a preliminary hearing. After he was allowed to withdraw, the defendant filed a pro se motion for a continuance of the trial date which was then set for October 4, 1977. He also requested time to retain private counsel. When he filed the written waiver of counsel on January 9, 1978, the court appointed advisory counsel for the defendant and told the defendant it was doing this "because selection of a jury, the voir dire of a jury, cross-examination of witnesses, preparation of jury instructions — there are many things which arise in a trial of a felony case that a person proceeding pro se would have some difficulty with." The defendant voiced his objection to advisory counsel in this occasion, and again on January 26, 1978, when the second advisory counsel was appointed. The defendant at this appearance stated that he did·not want advisory counsel to assist him, that he was "perfectly able to represent" himself and that "the United States Constitution says that I can represent myself." Thereafter, the defendant filed various motions on his own behalf.

Against this background, the court once again, on October 6, 1978, asked the defendant if he desired counsel appointed for him, and the defendant stated that he did not and would represent himself. The defendant, in response to the court's question, acknowledged that by representing himself he might be at some disadvantage in the trial of the case but persisted in his choice. The court reconfirmed the appointment of advisory counsel and informed the defendant that his right of self-representation would be honored, but the court stood ready to appoint an attorney if he so desired.

It is desirable for the trial court to make a detailed inquiry into the question of the defendant's knowing and intelligent waiver of the right to counsel when the defendant first insists on his right of self-representation. *See Reliford v. People, supra.* We are satisfied from the entire record in this case that the defendant fully understood his right to counsel and knowingly, intelligently and voluntarily waived that right.

thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'." *Faretta v. California,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541, 45 L.Ed.2d at 581.

■ The second prong of the defendant's right to counsel claim focuses on his request to the trial court on the day of trial that a lawyer be appointed for him. The defendant's request for an attorney was accompanied by a simultaneous rejection of assistance from advisory counsel. Where the defendant exercises his constitutional right of self-representation, advisory counsel can assist the defendant only if and when the defendant requests such assistance. *See, e.g., Faretta v. California, supra; United States v. Price, supra; United States v. Dougherty,* 473 F.2d 1113 (D.C. Cir. 1972); *Reliford v. People, supra.* Viewed in the context of the defendant's prior rejection of the court's repeated offers to appoint counsel and his continued opposition to any assistance from advisory counsel at all times, the defendant's request for counsel on the day of trial is more akin to a calculated effort to forestall the trial than to a legitimate request for legal assistance.

■ The defendant's assertion that advisory counsel did not offer assistance is also lacking in merit. Advisory counsel's function is "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta v. California,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541, 45 L.Ed. 2d at 581. Advisory counsel by written letter on February 6, 1978, offered his assistance to the defendant. The defendant rejected this offer at that time and on every occasion when the trial judge invited him to avail himself of advisory counsel's service. He is bound by his choices, however ill-advised they may be.

The defendant claims that his two or three unsuccessful attempts to contact advisory counsel in October 1978 constitute conclusive evidence that he was denied these services. The evidence is uncontradicted, however, that advisory counsel never received these messages and, more importantly, the defendant neither wrote to the attorney at any time nor made any effort to contact him by telephone or otherwise prior or subsequent to the month of October. In fact, advisory counsel contacted the defendant shortly after his appointment, and the defendant told him in no uncertain terms that he neither desired nor needed any assistance in this matter. The record in this case belies the defendant's assertion that advisory counsel somehow faltered in his responsibilities. Accordingly, we reject the defendant's claim that he was denied his constitutional right to counsel and due process of law under the federal and state constitutions.

Since we are reversing this defendant's conviction for other reasons, the district court, upon remand, once again should inquire of the defendant whether he desires counsel appointed for him. If he does, the court should make the appointment. On the other hand, if he elects to represent

himself, the court may proceed as it has in the past.

## II. THE DENIAL OF A TRIAL CONTINUANCE

 The defendant contends that the trial court abused its discretion in denying his request for continuance because he was unprepared for trial. We disagree. This case was originally set for trial on October 4, 1977, but was continued because of several motions filed by the defendant, including a motion to disqualify the trial judge and a petition for writ of prohibition in this court.[4] On October 6, 1978, the case was set for trial on February 5, 1979. At these pre-trial hearings, the defendant was personally present in court and, with advisory counsel available, had adequate opportunity to prepare for trial. Under the circumstances present here, the trial court did not abuse its discretion in denying the defendant's "eleventh hour" request for a continuance. E.g., People v. Martinez, 190 Colo. 507, 549 P.2d 758 (1976); People v. McClure, 190 Colo. 250, 545 P.2d 1038 (1976); People v. Saavedra, 184 Colo. 90, 518 P.2d 283 (1974); People v. Peery, 180 Colo. 161, 503 P.2d 350 (1972) People v. Buckner, 180 Colo. 65, 504 P.2d 669 (1972); Leyba v. People, 174 Colo. 1, 481 P.2d 417 (1971); Johnson v. People, 172 Colo. 72, 470 P.2d 37 (1970). A defendant who has been given adequate opportunity and time to prepare for trial cannot complain if the court orders the trial to commence at the appointed time. See, e.g., Altobella v. Priest, 153 Colo. 309, 385 P.2d 585 (1963).

## III. REFERENCES TO DEFENDANT'S CRIMINALITY AND INCORRIGIBILITY

 The prejudicial error requiring a new trial in this case relates to information improperly conveyed to the jury about the defendant's prior criminality and anti-social behavior at various stages of the trial. Although the defendant failed to make a contemporaneous objection when these incidents occurred, he did raise them as error in his motion for a new trial. We conclude that the cumulation of these irregularities constitutes reversible error. Crim. P. 52(b).

 At the commencement of jury selection the trial judge read to the jury panel not only the charge of assault in the first degree but also the two counts alleging prior felony convictions for aggravated robbery in 1976. The judge also informed the jury panel that these two additional counts were in "violation of Colorado Revised Statutes 1973, 16-13-

---

[4] The motion to disqualify was granted not on the merits but, according to the court, to move the case along. The defendant had filed various motions including a motion to consolidate his case with one of the original codefendants from whom his case had been severed, motions for free transcripts, a motion to utilize an original codefendant as amicus curiae, a motion for access to the law library, and a petition for removal of the case to the United States District Court. The original proceeding filed in this court related to his right to represent himself without physical restraints, and was resolved favorably to the defendant. Lucero v. Lundquist, 196 Colo. 95, 580 P.2d 1245 (1978).

101(1) as amended, punishment for habitual criminals."

During the initial phase of the trial on the substantive offense the state's only witness, in response to the district attorney's question about how he knew the defendant prior to the date of the assault, testified that the defendant "was housed in cellhouse 7 in the R-1 Section for the incorrigible population . . . ."

After the jury returned a guilty verdict on assault in the first degree, the district attorney presented evidence of the defendant's two prior convictions. The trial court admitted into evidence a duly authenticated copy of the official records of the Denver district court pertaining to the defendant's conviction for aggravated robbery in June 1976. These records properly included the judgment of conviction, sentence and mittimus; however, they improperly included the original information charging the defendant not only with aggravated robbery but also the felony of second-degree kidnapping.

The district attorney followed a similarly infirm procedure with respect to proving the defendant's conviction for aggravated robbery in August 1976 in the district court of Jefferson County. Attached to the judgment of conviction, sentence and mittimus for aggravated robbery was a copy of the affidavit originally filed in that case requesting an arrest warrant for the defendant for the crime of aggravated robbery and first-degree kidnapping. The affidavit described in detail the manner in which the defendant committed the aggravated robbery and the facts and circumstances surrounding the alleged kidnapping. The court also admitted into evidence the penitentiary records of the defendant indicating that on January 11, 1977, a detainer was lodged against him for rioting in a correctional institution and criminal mischief.

 We have observed on prior occasions that evidence of prior criminality casts "damning innuendo likely to beget prejudice in the minds of juries." *Stull v. People,* 140 Colo. 278, 284, 344 P.2d 455, 458 (1959); *accord, People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979); *Huerta v. People,* 168 Colo. 276, 450 P.2d 648 (1969); *Naranjo v. People,* 161 Colo. 76, 419 P.2d 953 (1966); *Kostal v. People,* 144 Colo. 505, 357 P.2d 70 (1960); *Abbott v. People,* 89 Colo. 121, 299 P. 1053 (1931); *Cargill v. People,* 73 Colo. 218, 214 P. 387 (1923).

The reason for the general exclusion of evidence of prior criminality and bad character "in the case of a criminal defendant is that he may be found guilty on the present charge, not because he is believed to be guilty, but because his bad character may be thought by the jury to deserve punishment or to deprive an erroneous verdict of its moral injustice." III A *J. Wigmore, Evidence* § 921 at 724 (Chadbourn rev. ed. 1970); *see generally* Lawson, *Credibility and Character: A Different Look at an Interminable Problem,* 50 Notre Dame Law. 758 (1975).

At the very inception of this case, the disclosure to the jury panel of the defendant's two prior felony convictions so burdened the trial with the baggage of his prior criminality that a fair trial as we know it became an impossibility. This weighty encumbrance was made even heavier during the trial by the improper reference to his incorrigibility, and by the equally improper admission of evidence relating to kidnapping offenses (for which he apparently was never convicted) and to his alleged rioting and criminal mischief while in an institution (for which he apparently was never charged). *See, e.g., Hawkins v. People,* 161 Colo. 556, 423 P.2d 581 (1967); *Webb v. People,* 97 Colo. 262, 49 P.2d 381 (1935); *Tarling v. People,* 69 Colo. 477, 194 P. 939 (1921).

Where, as here, the defendant is charged with a serious substantive offense and with habitual criminality, and is proceeding pro se, the district attorney and the court must be sensitive to their mutual responsibility to avoid the admission of, and any reference to, inherently prejudicial matters. The defendant's prior criminality and bad character had no place in the first phase of the trial proceedings because the defendant did not take the witness stand in his own defense. Section 16-13-103(5), C.R.S. 1973 (1978 Repl. Vol. 8). The statutory procedures mandate a bifurcated trial in this situation precisely to obviate the prejudicial effect of prior convictions on the trial of the substantive offense. *See People v. Fullerton,* 186 Colo. 97, 525 P.2d 1166 (1974); *Heinze v. People,* 127 Colo. 54, 253 P.2d 596 (1953); *Routa v. People,* 117 Colo. 564, 192 P.2d 436 (1948). Likewise, the admission into evidence during the second phase of the trial of offenses not alleged as the basis of habitual criminality violated a basic precept of our criminal law: "Thou shalt not convict a person of an offense by proof that he is guilty of another". *Stull v. People,* 140 Colo. at 284, 344 P.2d at 458.

The People contend that the errors in this case were harmless because the substantive charge involved proof that the defendant, while an inmate at the penitentiary, assaulted a prison guard. Thus, the argument concludes, evidence of the defendant's status as a convicted felon was inevitably admissible on the substantive offense. We do not agree that the errors in this case were harmless.

The defendant's status as an inmate at the time of the assault could have been established without parading before the jury the nature and number of defendant's prior convictions and his alleged incorrigibility. Also, the prosecution could well have proven the defendant's two prior convictions in the secondary stage of the trial without informing the jury that he had been involved in two kidnappings, rioting in an institution and criminal mischief. Under the circumstances present here, the cumulative effect of these errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L. 1557

(1946); *People v. Hardin,* 199 Colo. 229, 607 P.2d 1291 (1980); *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973); Crim. P. 52(b).

The judgment is reversed and the cause is remanded to the district court for a new trial.

JUSTICE ERICKSON does not participate.