Timothy Raymond CALLIS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 83SC110.

Supreme Court of Colorado,
En Banc.

Dec. 10, 1984.

As Modified on Denial of Rehearing
Jan. 14, 1985.

David F. Vela, Colorado State Public Defender, Lyndy Ohneck, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for respondent.

QUINN, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Callis*, 666 P.2d 1100 (Colo.App.1982), which affirmed the conviction and sentencing of Timothy Raymond Callis (defendant) for first degree felony murder, first degree burglary, robbery, and first degree sexual assault. The court of appeals held, in pertinent part, that the trial court did not err in admitting that part of the defendant's confession which contained a reference to his having been on federal probation when he committed the crimes in question, and that the trial court properly entered separate convictions and sentences for the crimes of murder and each of the three underlying felonies. We conclude that the trial court should have excised the reference in the defendant's confession to his federal probationary status, but that the failure to do so in this case was harmless error. We also determine that, because the defendant's conviction for first degree sexual assault was a lesser included offense of felony murder, a separate judgment of conviction and sentence should not have been entered on the lesser included offense. We therefore affirm the judgments of conviction and the sentences for felony murder, first degree burglary, and robbery, and reverse the judgment of conviction and sentence for first degree sexual assault.

I.

The defendant was charged in one count with felony murder by causing the death of the victim, Rosey Bowman, on December 14, 1978, in Pueblo, Colorado, while committing or attempting to commit burglary, robbery, and first degree sexual assault,[1] and in three separate counts with first de-

1. § 18–3–102(1)(b), 8 C.R.S. (1978).

gree burglary,[2] robbery,[3] and first degree sexual assault.[4] A recitation of the pertinent trial testimony is necessary to place in focus the issues before us.

At 6:00 p.m. on December 14, 1978, Rita Schneider, who lived in an apartment about four blocks away from the victim, went to the victim's apartment at 126 East Grant Avenue in Pueblo, Colorado. Ms. Schneider worked as an evening caretaker for the victim, who was a 75 year old semi-invalid, and would usually spend the evening in the victim's apartment in order to tend to her needs. When Ms. Schneider entered the apartment, she found Rosey Bowman lying dead on a couch in the living room. The victim's body was only partially clothed, and her face was covered with a blanket and her left wrist tied to the couch. The apartment was in complete disarray at this time.

Police officers responding to the scene detected an identifiable odor of perfume throughout the apartment. Ms. Schneider informed the officers that the defendant, whom she knew as "Tim" and who lived in the same apartment building in which she lived, had been at the victim's apartment two days earlier. When Ms. Schneider opened the door on this occasion the defendant appeared surprised and said, "Hi, Rita. I didn't know you worked here." Ms. Schneider asked him what he wanted and he replied that he was looking for "George" in apartment 1. At this point the victim broke into the conversation and informed the defendant that there had never been a "George" living in that apartment and that her grandson had just moved in there. The defendant asked Ms. Schneider if she worked at this apartment all the time, and she informed him that she just worked there in the evenings. The victim again entered the conversation at this point and informed the defendant that another person worked for her in the mornings and that she stayed by herself in the afternoons.

Several hours after the victim's body was found, Pueblo police officers arrested the defendant at his apartment. Discovered in the apartment were a number of items belonging to the victim, including a bottle of pills with her name on it. The arresting officers detected a strong odor of perfume, similar to the odor in the victim's apartment, emanating from the defendant's person. Upon being advised of his *Miranda* rights, the defendant acknowledged that he understood them. When the officers asked the defendant his name, the defendant replied "Tim Calhoun" and signed a written advisement "Timothy James Calhoun." The officers then took the defendant to the police station.

At the police station the defendant was again advised of his *Miranda* rights and, after acknowledging that he understood them, agreed to make a statement. The statement, which was tape recorded and subsequently typewritten, was a response to questions by Officer Hurley of the Pueblo Police Department. The interrogation commenced as follows:

[OFFICER]: Tim would you tell me your full correct name?

[DEFENDANT]: Timothy Raymond Callis.

[OFFICER]: Callis?

[DEFENDANT]: Ca-ll-is.

[OFFICER]: Why do we have a name of Timothy James Calhoun, Tim?

[DEFENDANT]: It's just a name I've been going under so the Federal Probation Officers don't get ahold of me.

The defendant then proceeded to tell the officer that he and a person named Pat drank some beer and then "proceeded to go rip off this house." The defendant admitted putting a cover over the victim's head and raping her for two or three minutes on the couch. He stated that he then looked throughout the house for money and other valuables while his companion Pat proceeded to rape the victim. In a subsequent interview with the officer, the defendant

**2.** § 18–4–202, 8 C.R.S. (1978).

**3.** § 18–4–301, 8 C.R.S. (1978).

**4.** § 18–3–402, 8 C.R.S. (1978).

stated that he lied to the officer when he told him that a person named Pat also participated in the crimes. The defendant on this occasion admitted that he covered up the victim's face, tied her wrist to the couch, raped her for some period of time, and when she was no longer moving or making any sounds he got off of her and took money, jewelry, a bottle of pills, and other items from the apartment.

Prior to trial the defendant moved to suppress his confession on the basis that it was involuntary due to his state of intoxication. The trial court denied the motion to suppress, finding, *inter alia,* that the defendant "logically and carefully explained why he used an assumed name" at the time of his arrest. At trial the prosecution offered into evidence the defendant's confession to Officer Hurley on the evening of his arrest. The defendant objected to the reference in the confession to his federal probationary status and requested that this part of the confession be excised because it constituted a prejudicial reference to prior criminal conduct. The trial court, relying on the rule that any confession or admission made by the defendant is admissible in its entirety, *e.g., McRae v. People,* 131 Colo. 305, 281 P.2d 153 (1955), overruled the defendant's objection, denied the request for excision, and admitted the entire statement.[5]

The prosecution also presented evidence of admissions made by the defendant to two of his friends. One of the defendant's roommates, John Deitalbach, testified that on the morning of December 14, 1978, prior to the killing, the defendant suggested that they "knock a place over to get ourselves some money." Deitalbach rejected the defendant's suggestion. Later that same day the defendant said to Deitalbach that he had "killed someone" and gave Deitalbach a gold watch and a brooch as a Christmas present. After his arrest the defendant telephoned another friend, James Hurley, who testified that the defendant told him that "he killed some old lady, that he threw a blanket over her head and stuffed it in her mouth because she was screaming and he thought she suffocated."

Additional evidence established that fingerprints lifted from the victim's apartment matched those of the defendant, and hairs found at the crime scene bore similar characteristics to samples taken from the defendant's head and pubic area. A pathologist who performed an autopsy on the victim at approximately 9:00 p.m. on December 14, 1978, testified that the cause of death was suffocation. The pathologist found motile spermatozoa in the victim's vagina, a finding consistent with sexual intercourse within twenty-four hours of the examination, and also observed lacerations on her face and head, as well as small purpuric spots on her tongue and lungs, all of which were consistent with death by suffocation.

At the conclusion of the evidence the trial court instructed the jurors that the prosecution had the burden of proving the voluntariness of the defendant's confession, and that if the jurors were not so convinced they should disregard the confession.[6] The jury returned guilty verdicts to first degree murder, first degree burglary, robbery, and first degree sexual assault. The trial court entered judgments of conviction on the verdicts and sentenced the defendant to life imprisonment on his conviction for felony murder, and concurrent

---

5. Prior to the admission of the confession, the defendant presented evidence *in camera* showing that the reference to federal probation related to a 1976 adjudication of juvenile delinquency entered by the United States District Court for Wyoming. Other documentary evidence admitted *in camera* established that the delinquency adjudication arose out of the interstate transportation of a stolen motor vehicle, for which the defendant was placed on probation for a term of three years.

6. The trial court's instruction stated that the prosecution's burden was to prove voluntariness beyond a reasonable doubt. No issue is raised here concerning the correctness of this standard of proof, and we express no opinion on the matter. *See* CJI—Crim. 4:04, which adopts the reasonable doubt standard once a confession or statement is admitted, and the Notes on Use, which outline the uncertain state of Colorado law on this issue.

sentences of 30 to 40 years for first degree burglary, an indeterminate term not to exceed ten years for robbery, and 40 to 50 years for first degree sexual assault. The defendant appealed to the court of appeals, which affirmed the judgments of conviction and sentences. We granted certiorari to review two questions: whether the trial court erred in admitting into evidence that part of the defendant's confession in which he referred to his federal probation; and whether the trial court erred in entering separate judgments of conviction and sentences on felony murder as well as each of the three underlying felonies.

## II.

We initially consider the propriety of admitting the defendant's confession without excising the defendant's reference to his federal probationary status. Both the trial court and the court of appeals approved the admission of the entire statement under the "rule of completeness," which holds that when an accused's statement is admissible in a criminal case, the entire statement, including both favorable and unfavorable parts, should be admitted. This rule was initially adopted by this court in *McRae*, 131 Colo. 305, 281 P.2d 153, and reaffirmed in subsequent cases.[7] We reject the "rule of completeness" articulated in *McRae* and expressly overrule that decision. Although the reference to the defendant's probationary status should have been excised from the defendant's confession, we are satisfied from a review of the entire record in this case that the failure to do so was harmless error.

## A.

■■■ As a preliminary matter we acknowledge that an accused's use of a false name to an arresting officer under some circumstances might well be probative of

an intent to avoid detection or apprehension and thus be admissible as evidence of guilty knowledge or as probative of some issue relating to identification. *See People v. DeHerrera*, 680 P.2d 848, 850 (Colo. 1984). So too, evidence of the defendant's use of a fictitious name upon his arrest or an explicit reference in a custodial statement to his probationary status or past criminal record might well be relevant as one factor for a judge to consider in determining whether the statement was voluntary under the totality of circumstances. *See People v. Raffaelli*, 647 P.2d 230, 235 (Colo.1982). It does not follow, however, that evidence of prior criminality otherwise admissible in an *in camera* hearing on voluntariness should necessarily be admitted before the jury on the ultimate issue of guilt. Moreover, in this case, it was not the use of a false name that constituted the crux of the defendant's objection to admitting the entire confession but, rather, the explicit reference in the confession to his federal probation. Whether that reference should have been excised before admitting the defendant's confession into evidence before the jury is a question that must be resolved within the framework of traditional rules of relevancy.

## B.

■■■ It is a longstanding principle of criminal law that, subject to narrow exceptions, evidence of prior criminality is not admissible as proof of the accused's guilt with respect to the crimes charged against him. *E.g., Lucero v. People*, 200 Colo. 335, 615 P.2d 660 (1980); *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); *Huerta v. People*, 168 Colo. 276, 450 P.2d 648 (1969); *Clews v. People*, 151 Colo. 219, 377 P.2d 125 (1962); *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959); *see also* CRE 401, 403 and 404(b).[8] The purpose of this exclusion-

---

7. *E.g., People v. Lowe*, 660 P.2d 1261 (Colo. 1983); *Torres v. People*, 149 Colo. 314, 369 P.2d 80 (1962); *Gallegos v. People*, 146 Colo. 546, 362 P.2d 178 (1961); *Graham v. People*, 134 Colo. 290, 302 P.2d 737 (1956).

8. Although this case was tried before the Colorado Rules of Evidence became effective on January 1, 1980, those rules would not change our analysis in this case. CRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

ary principle is to avoid placing the accused in the position of defending against crimes for which he has not been charged and to guard against the likelihood that evidence of prior criminality having little bearing on the issue of guilt would assume undue proportions in the minds of the jurors with resulting prejudice to the accused. *E.g., Lucero,* 200 Colo. 335, 615 P.2d 660; *Naranjo v. People,* 161 Colo. 76, 419 P.2d 953 (1966); *Kostal v. People,* 144 Colo. 505, 357 P.2d 70 (1960). The recognized exceptions to this general rule of exclusion permit evidence of prior criminality if it is clearly relevant to a material issue in the case—such as, for example, identity, intent, guilty knowledge, motive, absence of mistake or accident, or a plan or scheme of which the crime charged was an integral part—and if the probative value of the evidence outweighs the potential for prejudice in the minds of the jurors. *See, e.g., People v. Christian,* 632 P.2d 1031 (Colo.1981); *People v. Taggart,* 621 P.2d 1375 (Colo.1981); *Honey,* 198 Colo. 64, 596 P.2d 751; *People v. Geller,* 189 Colo. 338, 540 P.2d 334 (1975); *Wilkinson v. People,* 170 Colo. 336, 460 P.2d 774 (1969); *see* CRE 403 and 404(b). When such evidence qualifies for one of these exceptions, we have required trial courts to strictly adhere to certain procedural safeguards calculated to insure against misuse of such evidence by the jury. As enunciated in *Stull,* 140 Colo. at 284, 344 P.2d at 458, these procedural safeguards consist of the following:

First, the prosecutor should advise the trial court of the purpose for which he

offers the evidence. Secondly, if the court admits such evidence, it should *then and there* instruct the jury as to the limited purpose for which the evidence is being received and for which the jury may consider it. Thirdly, the general charge should contain a renewal of the instruction on the limited purpose of such evidence. Lastly, the offer of the prosecutor and the instructions of the court should be in carefully couched terms: they should refer to "other transactions," "other acts," or "other conduct," and should eschew such designations as "similar offenses," "other offenses," "similar crimes," and so forth. (emphasis in original).[9]

Our cases have disregarded traditional rules of relevancy when the evidence of prior criminality is offered in the form of a confession or a statement by the accused. The conceptual basis for this relaxed standard of admissibility is the so-called "rule of completeness," which this court adopted in *McRae,* 131 Colo. at 311, 281 P.2d at 156:

We hold that it is a generally accepted rule of law ... that if a statement made by the defendant in a criminal case is admissible in evidence as an admission or declaration, it is admissible as an entire statement, including the parts thereof which are favorable as well as the parts which are unfavorable to the party offering the same in evidence, and where, as in the present case, the evidence discloses that defendant's statements were made without threat, compulsion, coer-

---

probable or less probable than it would be without the evidence." CRE 403 states that although evidence is relevant it may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 404(b) expressly provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident.

**9.** Evidence of criminal conduct that occurs contemporaneously with or is part and parcel of the crime charged is considered part of the *res gestae* of that offense and, consequently, is not subject either to the general rule that excludes evidence of *prior* criminality or to the procedural requirements of *Stull. See, e.g., People v. Freeman,* 668 P.2d 1371 (Colo.1983); *People v. Jackson,* 627 P.2d 741 (Colo.1981); *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied* 434 U.S. 1038 (1978). We deal in this case only with evidence of *prior* criminality that was not part of the *res gestae* of the crime charged.

cion, inducement or anything akin thereto, they are admissible against him although at the time of such statement he was under arrest charged with an offense, and the rule is the same in respect to written or oral confessions.

*Accord, e.g., People v. Lowe,* 660 P.2d 1261 (Colo.1983); *People v. Mann,* 646 P.2d 352 (Colo.1982); *Torres v. People,* 149 Colo. 314, 369 P.2d 80 (1962); *Wooley v. People,* 148 Colo. 392, 367 P.2d 903 (1961); *Gallegos v. People,* 146 Colo. 546, 362 P.2d 178 (1961); *Thompson v. People,* 139 Colo. 15, 336 P.2d 93 (1959); *Graham v. People,* 134 Colo. 290, 302 P.2d 737 (1956). Our reexamination of the rule of completeness, however, fails to reveal any principled basis for sanctioning the admission of prior criminality merely because that evidence takes the form of a statement or confession by the accused rather than independent evidence of his wrongful conduct. Considerations of relevancy and potential prejudice are no less present in one instance than in the other.

■ Several courts, in considering this issue, have held that evidence of other crimes is not automatically admissible because the defendant refers to these offenses in a confession or statement to the police. *E.g., United States v. Wiggins,* 509 F.2d 454 (D.C.Cir.1975); *People v. Rowe,* 22 Cal.App.3d 1023, 99 Cal.Rptr. 816 (1972); *People v. Oden,* 20 Ill.2d 470, 170 N.E.2d 582 (1960); *People v. Donaldson,* 8 Ill.2d 510, 134 N.E.2d 776 (1956); *Kiefer v. State,* 241 Ind. 176, 169 N.E.2d 723 (1960); *State v. Crisman,* 244 Iowa 590, 57 N.W.2d 207 (1953); *State v. Nagy,* 27 N.J.Super. 1, 98 A.2d 613 (1953); *People v. Chaffee,* 42 A.D.2d 172, 346 N.Y.S.2d 30 (1973). A contrary rule turns the standard of admissibility on the defendant's willingness to speak and not on the probative value of his statement to the charges. An accused, it is true, has the option of remaining silent in the face of custodial interrogation. It does not follow, however, that merely because the accused elects to speak, his entire statement thereby becomes legally relevant to the criminal accusation.

■ The appropriate inquiry in determining the admissibility of references to prior criminal conduct in an accused's custodial statement should be whether the reference to other offenses has independent relevancy to the charges and, if not, whether this reference can be eliminated without significantly impairing the substantive content of those parts of the statement otherwise admissible. We thus hold that a trial court, in considering the admissibility of an accused's statement, must excise or delete any reference to prior criminality that is not otherwise admissible under the narrow exceptions to the general rule of exclusion, unless such excision would significantly impair the meaning and evidentiary value of the admissible parts of the accused's statement. If the trial court rules that the reference to prior criminality qualifies for admission under applicable rules of relevancy or that the reference cannot be excised without impairing the meaning and evidentiary value of the other admissible parts of the statement, the court must then adhere to the procedural safeguards of *Stull* by appropriately instructing the jury on the limited purpose for which such evidence is being received. The rule we herein adopt, which is based solely on evidentiary considerations, is to be given prospective effect except as to this case, and is therefore to be made applicable only to trials commencing after the effective date of our decision. *See generally, People in the Interest of C.A.K.,* 652 P.2d 603 (Colo.1982); *People v. Kerridge,* 20 Mich.App. 184, 173 N.W.2d 789 (1969); *State v. Shafer,* 609 S.W.2d 153 (Mo.1980); *Commonwealth v. Brown,* 470 Pa. 274, 368 A.2d 626 (1976).

■ Although it is undisputed that the reference in the defendant's confession to his federal probationary status was an obvious acknowledgment of prior criminality, the People nonetheless argue that this reference was properly admitted to establish the defendant's state of mind with respect to the crimes charged against him and the voluntariness of his confession to the police. We find no merit in the People's claim. The mere fact that the defendant

was on federal probation at the time of the offenses furnishes no rational basis to infer therefrom that he did or did not possess the mental culpability essential to the crimes charged in the information. *See, e.g., People v. Quintana,* 665 P.2d 605 (Colo.1983); *Honey,* 198 Colo. 64, 596 P.2d 751; *Naranjo,* 161 Colo. 76, 419 P.2d 953. So too, whatever probative value the defendant's probationary status might bear on the initial determination of voluntariness by the trial court was substantially outweighed by the danger of unfair prejudice resulting from exposing this evidence of prior criminality to the jury. *See, e.g., Lucero,* 200 Colo. 335, 615 P.2d 660; *Naranjo,* 161 Colo. 76, 419 P.2d 853; *Kostal,* 144 Colo. 505, 357 P.2d 70. The reference to the defendant's federal probation could easily have been eliminated from the confession, before it was submitted to the jury, without impairing the meaning and evidentiary value of those parts of the confession bearing on the charges in this case. The trial court's failure to excise from the defendant's written confession the reference to his federal probation was error.

### C.

We are left then to consider whether the evidentiary error in this case was either harmless or, instead, requires a reversal and a new trial. Crim.P. 52(a) states that any error "which does not affect substantial rights shall be disregarded." This rule merely recognizes the obvious fact that "[a] perfect trial is an impossibility and minor mistakes will inevitably occur." *People v. Taylor,* 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979). The proper inquiry in determining a harmless error question is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Quintana,* 665 P.2d 605; *see also Taylor,* 197 Colo. 161, 591 P.2d 1017; *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972).

Our review of the record in this case provides us with utmost assurance that the trial court's failure to excise from the defendant's confession the reference to his federal probation was harmless error. We initially note that the improperly admitted evidence, while implicating the defendant in prior criminality, did not delineate the nature of his past criminal conduct. We are not dealing, therefore, with an express reference to a prior heinous crime that might well have cast an irreparable cloud of condemnation over the defendant. Equally if not more significant is the overwhelming evidence of the defendant's guilt. The prosecution presented evidence that the defendant admitted the killing to two of his companions. The defendant's guilt was further corroborated by evidence establishing that at the time of his arrest he exuded a perfumed odor similar to that present in the victim's apartment when her body was discovered and that he had in his possession various items taken from the crime scene. Finally, the defendant's fingerprints were lifted from the victim's apartment, and hairs located at the crime scene bore similar characteristics to the hair samples taken from the defendant's head and pubic area. The trial record, in short, clearly establishes that the error in not excising from the defendant's confession the reference to his federal probationary status did not substantially influence the jury's verdicts nor affect the fairness of the trial proceedings. This evidentiary error, therefore, can only be deemed harmless.

### III.

We next consider whether the trial court erred in entering separate judgments of conviction and sentences for first degree felony murder, first degree burglary, robbery, and first degree sexual assault. The court of appeals, although noting that the first degree sexual assault should be treated as the felony underlying the felony murder conviction, went on to hold that there was no merger of the underlying sexual assault with felony murder and, thus, the imposition of concurrent sentences for sexual assault and felony murder did not violate the prohibition against multiple punishments for the same offense. *Callis,* 666

P.2d at 1101–02. We conclude that the crime of first degree sexual assault was a statutory lesser included offense of felony murder and, on that basis, separate judgments of conviction and sentences for the lesser included and greater offenses of both first degree sexual assault and felony murder were prohibited by section 18–1–408(1), 8 C.R.S. (1978).[10]

### A.

■ In *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983), we considered whether a trial court could appropriately enter separate judgments of conviction and sentences for the crimes of felony murder and robbery based on the robbery victim's death during the defendant's commission of or immediate flight from the robbery. Section 18–1–408(1), 8 C.R.S. (1978), was the starting point of our analysis. That section prohibits multiple convictions when one offense is a lesser included of the other. Proceeding from this statutory framework, we reasoned that "if the proof of the greater offense as charged necessarily includes the very same elements required for the lesser offense, the lesser offense is necessarily included in the greater, and a conviction of the greater precludes a simultaneous conviction of the lesser." *Bartowsheski,* 661 P.2d at 245. Because the charge of felony murder based on the causation of a robbery victim's death required proof of the very same elements essential to the crime of robbery, we held that Bartowsheski's conviction of the greater offense of felony murder, predicated as it was upon his killing of the robbery victim, precluded his simultaneous conviction of the lesser included offense of robbery. *See also People v. Raymer,* 662 P.2d 1066 (Colo.1983); *People v. Lowe,* 660 P.2d 1261 (Colo.1983). *Bartowsheski* thus prohibits the entry of separate judgments of conviction and sentences for felony murder and the felony that constitutes the legal predicate for the felony murder conviction.

### B.

The remaining question is which of the three underlying felonies constitutes the lesser included offense of felony murder. Although the information in this case charged the defendant with felony murder by causing the death of the victim while committing or attempting to commit burglary, robbery, or first degree sexual assault, only one of these alleged felonies was essential to support his conviction for felony murder. Section 18–3–102(1)(b), 8 C.R.S. (1978), in this respect, states as follows:

(1) A person commits the crime of murder in the first degree if:

\*    \*    \*    \*    \*    \*

(b) Acting either alone or with one or more persons, he commits or attempts to commit ... robbery, burglary, [or] sexual assault in the first or second degree as prohibited by section 18–3–402 or 18–3–403, ... and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

This statute makes clear that the legal basis of criminal liability for felony murder is the causation of another's death in the course of or in furtherance of certain enumerated felonies or in the course of immediate flight therefrom.

■ With this causation element in mind, we believe that when a defendant is convicted of multiple felonies, all of which are alleged as the legal predicates for the commission of felony murder, that felony which most directly contributes to the death of the victim should serve as the essential element of the felony murder conviction. In this case the evidence established that the victim died from suffocation caused by the defendant's placement of a

---

**10.** Our statutory resolution of this issue renders it unnecessary to consider whether such multiple convictions and sentences would also be barred under the Double Jeopardy Clause of the United States and Colorado Constitutions. U.S. Const. amend. V and XIV; Colo. Const. art. II, § 18.

blanket over her head while he was sexually assaulting her. It follows that the defendant's conviction for first degree sexual assault is the appropriate felony to serve as the legal predicate for the felony murder conviction. The defendant's conviction for the greater offense of felony murder, therefore, precludes his simultaneous conviction of the lesser included offense of first degree sexual assault.

Our decision gives as much effect to the jury verdicts as can be done without violating section 18–1–408(1), 8 C.R.S. (1978), which is clearly intended to prohibit multiple convictions and punishments for both a greater and lesser included offense. Because the crimes of first degree burglary and robbery are not encompassed by the greater offense of felony murder, the judgments of conviction for these other offenses may exist independently of the judgment of conviction for felony murder. *See Bartowsheski*, 661 P.2d at 247.

The judgments of conviction and sentences for the crimes of felony murder, first degree burglary, and robbery are affirmed, and the judgment of conviction for first degree sexual assault, along with the corresponding sentence for that crime, is reversed.